**IN RE K.J., Appellant**

**NOS. 01–15–00947–CV, 01–15–00948–CV, 01–15–00949–CV**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued April 28, 2016

William M. Thursland, Houston, TX, for appellant.

Devon Anderson, District Attorney, Jessica Caird, Assistant District Attorney, Harris County, Texas, Houston, TX, for appellee.

Panel consists of Chief Justice Radack and Justices Keyes and Higley.

## OPINION

Sherry Radack, Chief Justice

This is an appeal from a juvenile court order waiving jurisdiction and transferring appellant's case to the criminal district court. We affirm.

## BACKGROUND

Appellant is charged with three counts of armed robbery against three different complainants in three separate incidents. At the time of the alleged offenses, appellant was 14 years old. The State filed a petition in all three cases asking the juvenile court to waive jurisdiction and transfer the cases to criminal district court.

Relying on evidence taken at an evidentiary hearing, as well as appellant's juvenile probation report and a psychological evaluation, the juvenile court granted the State's motions with the following November 5, 2015 order:

### ORDER TO WAIVE JURISDICTION

ON THE 1ST DAY OF OCTOBER, 2015, this Court held a hearing in the above styled and numbered petitions pursuant to Section 54.02 of the Texas Family Code. After reviewing all the testimonial and documentary evidence admitted at the hearing, the Court's files under these cause numbers of which it took judicial notice, and the Respondent's demeanor and conduct before this Court at the hearing and during interactions with the Court before the hearing, the Court now decides to waive its exclusive, original jurisdiction and discretionarily transfer the Respondent to the Criminal District Court. The Court reaches this decision because the welfare of the community requires criminal proceedings based on the seriousness of

the offenses alleged and the background of the child.

In reaching this decision, the Court makes the following findings of fact:

1. There is probable cause to believe the Respondent committed the offenses, as alleged in the petitions, namely the offenses of Aggravated Robbery, which are first degree felonies. The Respondent, having been born on November 22, 2000, was 14 years old on April 12 and 13, 2015, the dates of the commission of the alleged offenses.

2. The Respondent was properly served with the petitions and summons in compliance with the notice requirements of Section 53,04,53,05, 53.06, and 53.07 of the Texas Family Code including that the summons stated the purpose of the hearing was to consider discretionary transfer to Criminal District Court. Moreover, the Respondent received the petitions and summons at least two days before this Court conducted the hearing.

3. The Court ordered a complete diagnostic study, social evaluation, and full investigation of the Respondent, his circumstances, and the circumstances of the alleged offenses. The Court did receive a full investigation of the Respondent, his prior referrals, a social evaluation, diagnostic study, and his circumstances.

4. At least five days before this hearing, the attorney for the Respondent and attorney for the State received a copy of all reports this Court considered in reaching its decision, namely: the probation report, the Court Report information Summary and 315th District Court Certification Report.

The Court then weighed, in addition to the above, the following factors and makes the below listed findings that support its decision, namely:

1. This Court reviewed and considered whether the alleged offenses were against person or property and finds in support of discretionary transfer specifically as follows:

There is probable cause to believe the Respondent committed multiple offenses against the person of another, and that because they are against the person it gives greater weight in favor of discretionary transfer under this factor.

More specifically, the Court finds the following aspects of the alleged offenses, and the Respondent's alleged participation in it, particularly egregious and aggravating:

The Respondent used and exhibited a deadly weapon, namely a firearm, during the commission of each of these offenses. On April 12, 2015, the Respondent stole a white SUV from a complainant in an apartment complex parking lot. The Complainant located pictures that had been taken with his stolen cellphone that were uploaded to his photo album on his iCloud account. The Respondent is in the pictures and is seen holding a .380 caliber pistol. The complainant identified the Respondent as the individual who held the gun to him and took his property. The Complainant stated to the officer that he was scared for his life. The Respondent later admitted in a recorded interview with police officers that he had driven a white SUV.

Further, on April 13, 2015, the Respondent threatened an eighty-year-old Complainant by pointing a firearm to her while demanding that she exit her vehicle. This ac-

tion put the Complainant in fear of death or serious bodily injury. The Respondent then drove away in the complainant's vehicle. The Respondent was later identified by the complainant as the gunman in the aggravated robbery.

Additionally, on April 13, 2015, the Respondent approached a Complainant in her apartment complex and pointed a firearm to her face and demanded her keys, cellphone, and the passcode to her phone. The Complainant testified that she was terrified and was scared for her life. The Complainant identified the Respondent as the person who held the gun up to her head. The Complainant's stolen cellphone was later recovered with a video of the Respondent on it, as well as, photos of the Respondent holding guns and displaying gang signs.

2. This Court reviewed and considered the sophistication and maturity of the Respondent and finds in support of discretionary transfer specifically as follows:

The Respondent's level of Sophistication–Maturity, according to Dr. John Webb, was in the middle range in comparison to most individuals his age. Dr. Webb stated that the Respondent exhibits an average level of intellectually based sophistication and an average level of criminal sophistication.

Additionally, the Respondent was found to be at a moderate risk for future offending. Dr. Webb listed out the following risk factors that are associated with reoffending that he saw present in the Respondent: Attention–Deficit/hyperactivity difficulties, a history of nonviolent offending, past supervision/intervention failures, poor school achievement, peer delinquency, stress and poor coping, community disorganization, risk taking/impulsivity, substance use difficulties, anger management problems, poor compliance, and low interest/commitment to school. Further, the Respondent demonstrated that he clearly understands and is very aware that there are different consequences in the juvenile compared to the adult justice system.

3. This Court reviewed the Respondent's record and previous history and finds in support of discretionary transfer specifically as follows:

The Respondent had several prior referrals to the Harris County Juvenile System. The Respondent was placed on deferred adjudication probation for the misdemeanor offense of Criminal Trespass that was referred on August 5, 2013. On December 9, 2014, the Respondent was placed on probation for the felony offenses of Unauthorized Use of a Motor Vehicle and Criminal Mischief ($1,500–20,000) and the misdemeanor offense of Burglary of a Vehicle.

The Respondent was not compliant on his probation. In addition to being charged with three aggravated robbery charges, he violated his court ordered curfew, admitted to using marijuana while on probation, and failed to attend the Reality Oriented Physical Experience System program as directed by his probation officer. Additionally, the Respondent was reported as a runaway to his probation officer in March, 2015, and again in April, 2015.

The Respondent was placed in the Gang Supervision Program from December 9, 2014 to present.

The Respondent had fourteen (14) disciplinary write-ups while detained at the Harris County Juvenile Detention Center, including violations for refusal to attend school, assaulting staff/another resident, exhibiting behavior that poses a threat to the safety/security of the facility, inciting a riot, destroying/defacing county property, and disrespecting staff.

4. This Court reviewed and considered the prospects of adequate protection of the public and the likelihood, if any, of the rehabilitation of the Respondent by use of the procedures, services, and facilities currently available to the Juvenile Court and based on the above and its knowledge of the rehabilitative services that may be provided under Title III of the Texas Family Code and the age restrictions placed on under the Texas Human Resources Code, finds. In support of discretionary transfer specifically as follows:

The Respondent's mother reported that while on probation, the Respondent brought a gun into her home and discharged the weapon. She also reported that the Respondent would leave for days while under her supervision and she did not know his whereabouts. She stated that she was frustrated with his noncompliance and negative behavior.

Further, the efforts of the Harris County Juvenile Probation Department to rehabilitate the Respondent for past criminal behavior have been unsuccessful, and instead the Respondent's criminal behavior escalated in the more serious offense of Aggravated Robbery,

Further, the crimes the Respondent is alleged to have committed are so egregious and aggravated that this Court determines that based on these offenses and his prior referral history, that he will not be amenable to this Court's additional efforts to rehabilitate him,

Further, the decision to seek a determinate petition is in the discretion of the prosecutor and. the prosecutor chose not to seek grand jury approval in these cases. See Tex. Fam.Code Ann. § 53.045(a)(West 2014).

Based on the above, as well as the totality of the evidence presented in the clerk's record, at the hearing, in the written reports, studies, and investigations, this Court ORDERS and CERTIFIES that its jurisdiction sitting as a Juvenile Court, be WAIVED, and that [K.J.] be hereby REMANDED to the custody of the Sheriff of Harris County, Texas and is hereby transferred to the Criminal District Court of Harris County, Texas, for criminal proceedings to be dealt with as an adult in accordance with the Texas Code of Criminal Procedure.

The Court further stated orally on the record on the 1ST day of OCTOBER, 2015, and in writing in this Order that the Juvenile may immediately appeal the certification decision under Family Code Section 56.01; and that by Order of the Texas Supreme Court, the appeal is accelerated under the Texas Rules of Appellate Procedure applicable to accelerated appeals.

Appellant timely brought this appeal.

## ISSUES ON APPEAL

In a single issue, appellant argues that "the juvenile court abuse[d] its discretion

by waiving jurisdiction and transferring the case to the criminal court because the evidence is legally and factually insufficient to support its findings of fact."

## APPLICABLE LAW AND STANDARD OF REVIEW

The juvenile court has exclusive, original jurisdiction over cases involving the prosecution of conduct committed by juveniles. TEX. FAM.CODE ANN. § 51.04 (West 2014). Although the juvenile court can, under certain circumstances, waive jurisdiction and transfer a juvenile to an adult court, the Court of Criminal Appeals has admonished:

> The transfer of a juvenile offender from juvenile court to criminal court for prosecution as an adult should be regarded as the exception, not the rule; the operative principle is that, whenever feasible, children and adolescents below a certain age should be "protected and rehabilitated rather than subjected to the harshness of the criminal system[.]" Because the waiver of juvenile-court jurisdiction means the loss of that protected status, in *Kent v. United States,* the United States Supreme Court characterized the statutory transfer proceedings in the District of Columbia as "critically important," and held that any statutory mechanism for waiving juvenile-court jurisdiction must at least "measure up to the essentials of due process and fair treatment."

*Moon v. State,* 451 S.W.3d 28, 36 (Tex. Crim.App.2014) (citations omitted).

Section 54.02 of the Texas Family Code grants the trial court the discretion to waive jurisdiction and sets forth the procedures and factors for the juvenile court to consider:

### § 54.02. Waiver of Jurisdiction and Discretionary Transfer to Criminal Court

(a) The juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

(A) 14 years of age or older at the time he is alleged to have committed the offense, if the offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree, and no adjudication hearing has been conducted concerning that offense;

. . . .

(b) The petition and notice requirements of Sections 53.04, 53.05, 53.06, and 53.07 of this code must be satisfied, and the summons must state that the hearing is for the purpose of considering discretionary transfer to criminal court.

(c) The juvenile court shall conduct a hearing without a jury to consider transfer of the child for criminal proceedings.

(d) Prior to the hearing, the juvenile court shall order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense.

(e) At the transfer hearing the court may consider written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of witnesses. At least five days prior to the transfer hearing, the court shall provide the attorney for the child and the prosecuting attorney with access to all written matter to be considered by the court in making the transfer decision. The court may order counsel not to reveal items to

the child or the child's parent, guardian, or guardian ad litem if such disclosure would materially harm the treatment and rehabilitation of the child or would substantially decrease the likelihood of receiving information from the same or similar sources in the future.

(f) In making the determination required by Subsection (a) of this section, the court shall consider, among other matters:

 (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

 (2) the sophistication and maturity of the child;

 (3) the record and previous history of the child; and

 (4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

. . . .

(h) If the juvenile court waives jurisdiction, it shall state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court, and shall transfer the person to the appropriate court for criminal proceedings and cause the results of the diagnostic study of the person ordered under Subsection (d), including psychological information, to be transferred to the appropriate criminal prosecutor. On transfer of the person for criminal proceedings, the person shall be dealt with as an adult and in accordance with the Code of Criminal Procedure, except that if detention in a certified juvenile detention facility is authorized under Section 152.0015, Human Resources Code, the juvenile court may order the person to be detained in the facility pending trial or until the criminal court enters an order under Article 4.19, Code of Criminal Procedure. A transfer of custody made under this subsection is an arrest.

. . . .

Tex. Fam.Code Ann. § 54.02 (West 2014).

■ "As long as the appellate court can determine that the juvenile court's judgment was based upon facts that are supported by the record, it should refrain from interfering with that judgment absent a scenario in which the facts identified in the transfer order, based on evidence produced at the transfer hearing as it relates to the non-exclusive Subsection (f) factors and beyond, bear no rational relation to the specific reasons the order gives to justify the conclusion that the seriousness of the offense and/or the juvenile's background warrant transfer." *Moon*, 451 S.W.3d at 46.

Until recently, the Texas courts of appeals were split in their approaches to reviewing a juvenile court's certification decision. The Court of Criminal Appeals recently resolved that split, explaining that "an appellate court should first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under 'traditional sufficiency of the evidence review.' But it should then review the juvenile court's ultimate waiver decision under an abuse of discretion standard." *Id.* at 47. In so doing, it approved of the El Paso Court of Appeals' approach:

> We apply a two-pronged analysis to determine an abuse of discretion: (1) did the juvenile court have sufficient information upon which to exercise its discretion; and (2) did the juvenile court err in its application of discretion? A traditional sufficiency of the evidence review helps answer the first question, and we

look to whether the juvenile court acted without reference to any guiding rules or principles to answer the second.

*Id.* at 47 (quoting *In re J.R.C.S.,* 393 S.W.3d 903, 914 (Tex.App.–El Paso 2012, no pet.)).

## ANALYSIS

Appellant challenges the legal and factual sufficiency of the evidence to support the juvenile court's findings. He concedes he was eligible for certification because he was 14 years old at the time of the alleged crimes, and that there was "ample evidence" to support the juvenile court's finding probable cause that K.J. committed the offenses alleged.

Appellant emphasizes, however, that a finding of probable cause that a juvenile committed one or more serious first-degree offenses under section 54.02(a) does not alone justify automatic waiver and transfer because such an approach would render the factors to be considered under section 54.02(f) superfluous. *See Moon v. State,* 410 S.W.3d 366, 375 (Tex.App.–Houston [1st Dist.] 2013) (citing *R.E.M. v. State,* 541 S.W.2d 841, 846 (Tex.Civ.App.–San Antonio 1976, writ ref'd n.r.e.)) ("We find nothing in the statute which suggests that a child may be deprived of the benefits of our juvenile court system merely because the crime with which he is charged is a 'serious' crime."), *aff'd,* 451 S.W.3d 28 (Tex.Crim.App.2014).

### A. Sufficiency of the evidence to support section 54.02(f) findings

We limit our sufficiency review "to the facts that the juvenile court expressly relied upon, as required to be explicitly set out in the juvenile transfer order under Section 54.02(h)." *Moon,* 451 S.W.3d at 50.

*(f)(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person*

The juvenile court found this factor weighed heavily in favor of transfer, given appellant's "particularly egregious and aggravating" participation in crimes against several people. The court emphasized that appellant "used and exhibited a deadly weapon, namely a firearm, during the commission of each of these offenses." The court also noted that all three complainants from the three robberies testified that they were in fear for their lives.

Appellant concedes that the evidence supports the juvenile court's finding that this factor weighs in favor of certification as an adult. We agree.

*(f)(2) the sophistication and maturity of the child*

The juvenile court made the following findings regarding this factor: (1) the psychological evaluation-certification report placed appellant's "level of Sophistication–Maturity" in "the middle range in comparison to most individuals his age," with appellant "exhibit[ing] an average level of intellectually based sophistication and an average level of criminal sophistication.," (2) the report found appellant to be "a moderate risk for future offending," based on several risk factors, i.e., "attention-deficit/hyperactivity difficulties, a history of nonviolent offending, past supervision/intervention failures, poor school achievement, peer delinquency, stress and poor coping, community disorganization, risk taking/impulsivity, substance use difficulties, anger management problems, poor compliance, and low interest/commitment to school," and (3) appellant "demonstrated that he clearly understands and is very aware that there are different consequences in the juvenile compared to the adult justice system."

Appellant argues that the juvenile court's findings with regard to appellant's sophistication and maturity are not supported by the evidence. He notes that, based on several assessments, the doctor concluded that he exhibits "a below average level of intellectually-based sophistication," and that, based on those same assessment and interviews, appellant "exhibits a *below average level of maturity in comparison to others his age.*"

Appellant also insists that his young age—14 years and 4 months—at the time of the alleged offenses indicates that he is unlikely to be sophisticated or mature. He reasons that the "average sophistication-maturity level of a fourteen year old is not high," so "the fact that his overall sophistication-maturity level is in the average range for a fourteen year old weighs against certification and not for it." He further contends that the juvenile court should have discounted the value of the psychological evaluation because the doctor did not testify at the certification hearing and his report "does not adequately explain or reconcile his overall conclusion that K.J. exhibits an average level of maturity" with the assessments indicating "a below average level of maturity in comparison to others his age."

Appellant next argues that the juvenile court's finding that he understood the different consequences between juvenile and adult incarceration is "hardly an indication of sophistication and maturity" and, more importantly, is not supported by the record, which contains statements by appellant indicating that he had no idea of the actual potential sentence faced in juvenile court. With the regard to the court's finding about the future risk of future offending, appellant argues this goes to a different factor—i.e., likelihood of rehabilitating a child"—and is irrelevant to sophistication and maturity.

Finally, appellant points to testimony from an officer at the hearing and a recording of appellant that was played at the hearing and entered into evidence as strong evidence of his *lack of* sophistication and maturity. Sergeant Freeman testified that appellant and his co-defendants treated their arrest like it was "all a joke." Appellant and his friends were aware their conversation was being recorded, but demonstrated no comprehension that their discussion could prejudice their cases. Appellant expressed the view that he was not worried about what charges were brought because, since he was 14 years old, he could not be required to serve more than two years in confinement. Appellant and his co-defendants repeatedly say, on tape, "f* *k" various officials that are involved in the certification process, including the judge, the district attorney, Houston Police Department, the sheriff, a particular constable, and a particular probation officer.

Freeman also testified that appellant stated that the juvenile court judge would not certify him as an adult. Appellant went on to say that getting money is all that matters, and that he does not care what he risks to get it. Appellant contends a finding of criminal sophistication is not warranted, given that he made no attempt to disguise his identity during the robberies, he used the first vehicle he stole to commit the second and third robberies, he took incriminating pictures of himself on his victims' cell phones, he left his gun in a stolen vehicle, and he admitted to an officer that he was driving a vehicle that matched the description of one stolen in the first robbery.

In sum, appellant argues that the "evidence pertaining to this [sophistication/maturity] factor weighs strongly against certification and is legally and fac-

tually insufficient to support the findings recited in the order."

The State disagrees, contending that the trial court had sufficient evidence of appellant's maturity and sophistication to weigh application of this factor in favor of certification. It acknowledges that appellant "cites to conflicting evidence on the sophistication and maturity finding," but argues in response to appellant's legal sufficiency challenge that, applying the standard set out in *Moon*, 410 S.W.3d at 371, the court's finding is supported by more than a scintilla of evidence when evidence favorable to the finding is credited and unfavorable evidence is disregarded unless a reasonable fact finder could not have rejected it. The State contends, in its brief:

> On the issue of sophistication and maturity, the trial court included a finding that it received a full investigation into appellant's circumstances, his prior referrals, social evaluation, and diagnostic study. Appellant was 14 years of age on the days he committed the aggravated robberies, all of which were first-degree felonies. The juvenile court relayed the facts of each of the robberies, explained that appellant was the gunman in each, he threatened three people at different times with the gun, took cars and property, and threatened an 80-year-old woman with the gun. In one of the robberies he placed the gun in the female victim's face and in another he pointed it at her.

> Specifically on the issue of maturity and sophistication, the trial court noted that psychological testing revealed appellant as in the "middle range in comparison to most individuals his age . . . . [and appellant] exhibit[ed] an average level of intellectually based sophistication and an average level of criminal sophistication." The juvenile court

based this finding on the report from the psychologist included in Petitioner's Exhibit Number 6, which stated upon review of the full battery of tests that, ". . . [Appellant's] overall level of sophistication-maturity falls in the Middle range. This suggests that [appellant] is of average maturity in comparison to others his age."

As part of that conclusion, the testing on the WISC–V showed appellant to have an extremely high ability for fluid reasoning, and an overall average level on the intelligence scale. His fluid reasoning level placed him equal to or greater than 99.9 percent of other individuals his same age. His IQ tested at 102, again in the average range for intelligence. Yet, his working memory was in the high average range of intellectual functioning.

On the Risk Sophistication Treatment Inventory, appellant scored consistently in the middle range for: violent and aggressive tendencies, planned and extensive criminality, and psychopathic features. He scored with an average level of criminal sophistication throughout the testing in comparison to other offenders his age. Likewise, on the Risk Sophistication Treatment Inventory Results, he was in the middle range for autonomy, emotional maturity, and had an overall Sophistication–Maturity score in the middle range at a 46, the middle range consisting of scores between 41 and 59.

The psychologist weighed those results against other tests performed, his clinical interview and cognitive assessment, and reached the overall opinion that appellant's, "waiver evaluation results indicate[d] that he exhibit[ed] an average level of intellectually based sophistication in comparison to most individuals his age and an average level of

criminal sophistication. He was found to exhibit an average level of maturity." Accordingly, although appellant points to individual scores on particular tests, the overall opinion of the psychologist when he reviewed all the testing and interviewed appellant supports the trial court's finding of a middle range and average level of intellectually-based and criminal sophistication. More than a scintilla of evidence supports the trial court's finding regarding appellant's sophistication and maturity.

The juvenile court further based its sophistication and maturity finding on appellant's clear understanding and awareness of the different consequences in the juvenile versus the adult justice system. The juvenile court cited to the recording wherein appellant and his coactor discussed the likely results of adjudications in juvenile court, their likelihood of remaining in the juvenile system, and their apparent knowledge of the differences between the systems, as well as one of the lead detectives analysis of the conversation. More than a scintilla of evidence likewise supported this conclusion based on a review of the conversation the juveniles had while being openly recorded by police.

We agree that the juvenile court had more than a scintilla of evidence to support the finding that appellant's maturity and sophistication weighed in favor of certification as an adult and, thus, it is supported by legally sufficient evidence.

■ Assessing the factual sufficiency of the evidence requires us to additionally consider evidence contrary to the trial court's determination and determine if, after weighing all the evidence, the "juvenile court's finding that appellant was of sufficient sophistication and maturity to be tried as an adult was not so against the great weight and preponderance of the evidence as to be manifestly unjust." *See In re K.D.S.,* 808 S.W.2d 299, 303 (Tex. App.–Houston [1st Dist.] 1991, no pet.). The strongest evidence of appellant's lack of maturity and sophistication was his cavalier attitude about the crimes he committed, his naivety about the consequences of those crimes, and his engaging in conversations that incriminated himself while either not understanding, or not caring, about how his statements would prejudice his defense.

We agree with appellant that there is evidence both supporting and not supporting a finding of maturity and sophistication. We do not agree, however, that the immaturity evidence appellant points to renders the juvenile court's finding that appellant was of sufficient maturity and sophistication to be tried as an adult erroneous as against the great weight and preponderance of the evidence. In assessing maturity and sophistication, courts place weight on whether there is evidence indicating that the juvenile does not know right from wrong, *see In re E.D.N.,* 635 S.W.2d 798, 801 (Tex.App.–Corpus Christi 1982, no pet.) ("The purpose of an inquiry into the mental ability and maturity of the juvenile is to determine whether he appreciates the nature and effect of his voluntary actions and whether they were right or wrong."), and whether the juvenile can assist his or her attorney in their defense. *Id.* Here, in addition to the doctor's assessments and reports indicating that appellant was of average sophistication and maturity, the court heard evidence that appellant knew his actions were wrong, and that he did not care. In addition, there is no evidence to indicate he could not assist his counsel with his defense. Finally, it is appropriate to look to whether the juvenile understands the differences between the adult and juvenile system as it applies to his alleged crimes. *Rodri-*

*guez v. State,* 478 S.W.3d 783, 787 (Tex. App.–San Antonio 2015, pet. ref'd). Here, the record contains evidence of appellant's bragging that the juvenile judge would never certify him as an adult, and that the consequences for his alleged crimes would be less in the juvenile system. While he did not exhibit a correct understanding of the range of punishment available in the juvenile system, he conveyed that he understood he faced greater consequences if certified as an adult.

Finally, we note that, even though appellant displayed some immature behaviors that could be considered contrary to the trial court's maturity finding (that was supported by other maturity evidence), there need not be evidence in support of every section 54.02(f) factor weighing in favor of transfer, so long as there is sufficient overall evidence to justify the juvenile court's decision. *Moon,* 451 S.W.3d at 49 ("And, of course, reviewing courts should bear in mind that not every Section 54.02(f) factor must weigh in favor of transfer to justify the juvenile court's discretionary decision to waive its jurisdiction.").

### (f)(3) the record and previous history of the child

■ In support of its finding that appellant's record and previous history supported certifying appellant as an adult, the juvenile court cited a long list of prior infractions, noncompliance with probationary conditions, appellant's participation in the Gang Supervision Program, and numerous disciplinary write-ups while appellant was detained at the Harris County Juvenile Detention Center. Appellant again challenges the sufficiency of the evidence to support the finding that this factor weighs in favor of adult certification.

In response to the juvenile court's findings, appellant argues that it is "significant" that he successfully completed probation without an adjudication when he was 12 years old on one charge, and that neither that initial charge—nor the next four crimes appellant was charged with the same year—involved assaultive offenses.

As for his probation violations, appellant argues that there is simply not enough information in the record "to determine how much weight should be given these probation violations." He acknowledges that he admitted smoking marihuana, but notes that he did not fail his probationary drug screens. He acknowledges that he was not compliant with his court-ordered curfew, but complains that the record is devoid of details about how often or how severe the violations were. He acknowledges the evidence that he did not attend a two-day Reality Oriented Physical Experiences course when ordered to do so by his probation officer, but asserts there "is no indication if he eventually attended the program."

Appellant faults the juvenile court for failing to describe the Gang Supervision Program or make findings as to his compliance with its requirements. Finally, he argues that all the disciplinary write-ups that he incurred in juvenile detention are categorically different from criminal offenses. In sum, he argues that the "findings made in the Order [as to record and history] are not so serious as to make this the 'exceptional' case where transfer to the criminal court is justified.[1]

The State responds that "the report prepared by probation supported each of the

---

1. Appellant does not appear to make a legal or factual sufficiency challenge with regard to these findings, but rather argues that the facts

recited by the court are not specific enough to weigh in favor of certification.

factual findings included in the discretionary transfer order regarding appellant's previous history in the juvenile system." Appellant's record indicates that although appellant successfully completed one deferred prosecution for criminal trespass, he soon was charged with three new crimes, resulting in the juvenile court's placing him on probation and including him under its gang supervision caseload. He was on this more intensive supervision at the time he committed the latest three crimes at issue here. Appellant admits to failing to comply with his probation conditions, including using drugs and violating the court ordered curfew more than once, including on the two days he committed three aggravated robberies. The record also indicates that appellant was out of control at home, would not follow his grandmother's house rules, and was suspended from school for at least three days for behavior issues. Disciplinary measures from the juvenile court system, his family, the probation department, and the school did not appear to have an impact on appellant's behavior.

Appellant's behavior while in the Harris County Detention Center, including various violent infractions, coupled with the violent nature of the latest three felonies, demonstrates that appellant's risky and violent behaviors are escalating with time. We conclude that there is sufficient evidence to support each of the juvenile court's findings in support of its conclusion that appellant's record and history weigh in favor of transfer.

*(f)(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.*

 The juvenile court found that appellant's family is unable to control him and that his mother expressed frustration that appellant fired a gun in her home. The court also found that, not only have the repeated efforts by the Harris County Juvenile Probation Department to rehabilitate appellant been unsuccessful, his criminal behavior has actually escalated and become more violent. The court concluded that "the crimes the Respondent is alleged to have committed are so egregious and aggravated that this Court determines that based on these offenses and his prior referral history, that he will not be amenable to the Court's additional efforts to rehabilitate him."

Appellant argues that "there is no evidence as to what the full range of procedures, services, and facilities available to the Court are or why they would be ineffectual in rehabilitating appellant." Indeed, appellant insists, "the evidence actually supports a contrary finding, i.e., there are programs available to both rehabilitate K.J. and protect the public without transferring him to the criminal system." He points to the recommendations in the psychological evaluation for: (1) "placement in a setting that provides a high level of structure and where behavioral expectations and consequences are explicit," (2) individual counseling and group therapy, and (3) ADHD assessment and management. He also points to the psychiatric evaluation's note that appellant "may benefit' from a structured residential treatment program where he can learn to take responsibility for his actions and develop empathy for victims." The psychiatrist recommended ADHD medications for appellant if he is in a residential treatment program. Finally, appellant argues that even the Court Report Information Summary (CRIS) noted no previous CJPO placement and made specific recommendations as to services the Harris County Juvenile Probation Department could offer him.

The State responds that the juvenile court can be presumed to know the laws regarding juveniles and basic available services. The finding that appellant shot a firearm in his mother's home and the increasingly violent nature of appellant's crimes support the trial court's determination that the protection of the public and the unlikelihood of juvenile rehabilitation weigh in favor of transfer to criminal court. The judge is familiar with the complete ineffectiveness of the two types of juvenile rehabilitation measures already attempted with appellant: probation and Juvenile Detention. While on probation, appellant violated numerous terms of his probation, and committed several violent and egregious crimes. While detained in Juvenile Detention, among other problems, appellant was violent to other children and staff and "exhibit[ed] behavior that pose[d] a threat to the safety/security of the facility."

Appellant has not exhibited behaviors or attitudes indicating that he is interested in rehabilitation. His Psychological Evaluation does state the types of rehabilitative measures that could be helpful, but not that he is seeking, or necessarily receptive, to receiving help in the manner suggested through therapy and medication. And although it does state that he has not had prior CJPO placements, the report chronicles the "intensive supervision programs" that have not been effective.

Given the repeated failures of the prior rehabilitative measures and the increasingly violent nature of appellant's behavior—both in and out of Juvenile Detention—there is more than a scintilla of evidence supporting the juvenile court's determination that consideration of "adequate protection of the public and the likelihood of ... rehabilitation" in the juvenile system weighs in favor of certification as an adult. Even taking into account the potential rehabilitative measures appellant points to in the various reports, we cannot say that the juvenile court's determination was against the great weight and preponderance of the evidence, especially given the failure of previous rehabilitative attempts.

For all of these reasons, we overrule appellant's legal and factual sufficiency challenges to the trial court's findings under section 54.02(f).

## B. Did the juvenile court abuse its discretion?

In *Moon,* the Court of Criminal Appeals provided the following guidance about how we are to proceed once we determine that the juvenile court's findings are supported by sufficient evidence:

[W]e hold that, in evaluating a juvenile court's decision to waive its jurisdiction, an appellate court should first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under "traditional sufficiency of the evidence review." But it should then review the juvenile court's ultimate waiver decision under an abuse of discretion standard. That is to say, in deciding whether the juvenile court erred to conclude that the seriousness of the offense alleged and/or the background of the juvenile called for criminal proceedings for the welfare of the community, the appellate court should simply ask, in light of its own analysis of the sufficiency of the evidence to support the Section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles. In other words, was its transfer decision essentially arbitrary, given the evidence upon which it was based, or did it represent a reasonably principled application of the legislative criteria? And, of course, reviewing courts should bear in mind that

not every Section 54.02(f) factor must weigh in favor of transfer to justify the juvenile court's discretionary decision to waive its jurisdiction.

451 S.W.3d at 47.

■ Applying this standard, we conclude that the juvenile court did not abuse its discretion in waiving jurisdiction and transferring appellant's cases to criminal district court. Section 54.02(d) mandates the court "order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense." The court must hold a hearing, § 54.02(c), during which the court may consider "written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of witnesses." § 54.02(e). Finally, the court must state specifically in any transfer order the reasons for waiver.

Here, the court compiled and comprehensively reviewed all the materials required under section 54.02(d) & (e) and conducted the hearing as required under section 54.02(c). The court heard testimony from the officer who investigated the first of the three counts of armed robbery. That officer described the investigation, including the complainant's statement that appellant held a gun to her head and stole her car. She hid for two hours because she was frightened for her life and scared that he would come back.

The complainant from another of the armed robberies testified that appellant approached her, pointed a gun at her head, and demanded her keys, her cell phone, and the cell phone passcode. She was also terrified for her life. Appellant drove off in her car, but her husband was able to track it to a Walmart through the "find my phone" feature on the cell phone that appellant had also stolen from her. Her husband retrieved the car from Walmart with his spare key, and they discovered appellant's gun had been left inside. The complainant also found texts appellant had sent on her phone, as well as multiple pictures of himself and his friends holding guns and flashing gang signs. She testified that the robbery had a profound impact on their lives, and that she was still terrified all the time and was scared to be testifying at the certification hearing.

Deputy Grifno, who investigated the third armed robbery, testified that he identified appellant as a suspect in that robbery when the complainant reported he had been robbed and found pictures of appellant in his iCloud account that had been uploaded from the phone appellant had stolen from him. Grifno testified that the complainant in that case was also shaken up and scared for his life.

At that point, Grifno testified, appellant was charged with all three armed robberies. When Grifno picked up appellant and his co-defendant to be fingerprinted, appellant and his friend acted as if the whole thing was a "joke" and they were "very disrespectful" to Grifno and his partner. Appellant's co-defendant threatened to come find Grifno as soon as he was released from jail.

Sergeant Freeman also testified that he was present when appellant and his co-defendant were questioned. He described them as the two most disrespectful young men he has come across in thirty-three years with the sheriff's office. They expressed no remorse for what they had done, and the officers started recording the conversation shortly after appellant's co-defendant threatened Grifno. The recording was played at the certification hearing. On that recording, appellant and his co-defendant discussed the respective juvenile judges their cases were pending before, and appellant expressed the view

that he would be let go because Judge "Schneider let a b*tch go home for murder." Appellant also stated that he would never be certified as an adult because he was 14. Appellant expressed in the taped interview that money is all that matters and that he does not care how he does it as long as he gets what he wants. Freeman opined that, from his interactions with appellant, he believes appellant is much more dangerous than an average 14–year-old.

Appellant's mother testified next. She testified that appellant has been in a lot of trouble, but she thought it would benefit appellant if he were left in the juvenile system and sent to a structured juvenile facility. She did not want to see him go to an adult jail because he was only 14 when the crimes were committed. Neither she nor her husband has a criminal record, and she believes they can help appellant get back on track.

On cross-examination, appellant's mother conceded that appellant comes home often with money, cell phones, and cars that she believed he had stolen. That behavior worried her because she does not want him or anyone else to get hurt. She also testified that their landlord had threatened to evict them because of appellant's behavior.

Several exhibits were entered into evidence, and the juvenile court's order reflects it considered these materials as well. In addition to recordings, pictures, and a stipulation of age, there was (1) a Court Report Information Summary containing criminal history and some family information, (2) a 19–page Psychological Evaluation–Certification of appellant prepared by Dr. Webb, Ph.D, containing a narrative of appellant's general history, diagnostic impression, notes on the factors relevant to waiver of juvenile court jurisdiction, various test results, a summary of previous rehabilitation efforts, and an assessment of

treatment amenability and suggested approaches to recommended treatment, (3) a 9–page Psychiatric Evaluation Certification prepared by Dr. Witing, M.D. containing a summary of appellant's background and psychiatric history, substance abuse, mental status, an assessment of appellant's ability to assist in his defense, a Principal DSM–V Diagnoses, and potential treatment recommendations.

The juvenile court set forth relevant and comprehensive reasons for its decision to waive jurisdiction and transfer appellant. Because appellant has not established that the court "acted without reference to guiding rules or principles," or that its transfer was "arbitrary, given the evidence on which it was based," *Moon*, 451 S.W.3d at 47, we conclude that the juvenile court's order was within its discretion.

We overrule appellant's sole point of error.

## CONCLUSION

We affirm the trial court's order.