**Affirmed and Memorandum Opinion filed February 21, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00796-CV

---

### IN THE MATTER OF J.C.B, Appellant

---

**On Appeal from the County Court at Law No. 5
Fort Bend County, Texas
Trial Court Cause No. 17-CJV-021552**

---

## M E M O R A N D U M   O P I N I O N

Appellant J.C.B. is a juvenile charged with aggravated sexual assault. *See* Tex. Penal Code Ann. § 22.021. Appellant was sixteen years old at the time of the alleged offense. Appellant challenges the order granting the State's petition for the juvenile court to waive jurisdiction and transfer the case to criminal district court. *See* Tex. Fam. Code Ann. §§ 54.02, 56.01. In a single issue, appellant contends the juvenile court erred in its waiver of jurisdiction and certification of appellant to stand trial in adult court because the evidence is legally insufficient. Because we find the evidence legally sufficient to support the trial court's order and we find no abuse of discretion in the trial court's decision, we affirm.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

The State instituted this case in December 2017 by filing a petition for discretionary transfer to criminal district court seeking to certify appellant to stand trial as an adult. The State sought certification of the appellant as an adult due to the serious and severe nature of the alleged offense, the prospects of adequate protection of the public, and the improbable likelihood of rehabilitation of appellant by the use of the procedures, services, and facilities currently available to the juvenile court.

The juvenile court conducted a hearing on the State's petition. The State presented testimony from the complainant's mother; Detective Suni Jugueta of the Rosenberg Police Department; Vanessa Barriera, a forensic nurse employed by Ben Taub Hospital; Officer Steve Reprogle, Fort Bend County's juvenile probation placement services supervisor; Officer Jina Carmona, a Fort Bend County certified juvenile probation officer; and Dr. Karen Gollaher, a certified expert on juvenile sex offenders. Appellant did not present testimony on his own behalf.

The trial court admitted two exhibits offered by the State into evidence: Dr. Gollaher's psychiatric examination report and Detective Jugueta's social evaluation investigation report.

## A.  The Alleged Offense

K.E. (Katherine),[1] appellant's aunt and the mother of the complainant, testified that she took appellant into her home because he was having problems living with his father. Appellant was sixteen years old at the time he moved in with his aunt and her son—appellant's three-year-old cousin—the complainant. Katherine testified that she worked two jobs and often left appellant alone with her son.

In August 2017, appellant informed Katherine that the complainant was crying

---

[1] We use a fictious name, Katherine, to refer to the mother of the complainant in this case.

because he discovered he was bleeding when he went to the bathroom. Katherine testified that she went to check on her son and observed her son's anus to be red, bleeding, and wounded. Katherine immediately took her son to the hospital because she suspected he might have a hemorrhoid. At the hospital, she was given an ointment to apply to her son's anus. In the days following, the complainant would not let his mother apply the ointment because he did not want her to "put it [the ointment] on that way because [appellant] had put it on that way." Upon further questioning, the complainant communicated to his mother that appellant had penetrated him anally with his penis.

Katherine testified that she confronted appellant with the accusation, which he denied. Katherine then called law enforcement. Appellant was arrested, and the complainant was taken to the Child Advocacy Center for an interview and examination. Katherine further testified that the results of the interview and examination indicated that her son had been sexually abused. Katherine explained that her three-year-old son was also diagnosed with a sexually transmitted disease.

Vanessa Barriera, a forensic sexual assault nurse examiner at Ben Taub Hospital, testified that she examined the complainant in September 2017. Upon first meeting the complainant, she asked him why he thought he was in her office. He responded it was because he "had blood" and pointed to his buttocks. Barriera testified that she asked the complainant whether anyone had ever touched him anywhere on his body. The complainant responded by pointing to his buttocks and stating "yes," that his "brother, [appellant], did." According to Barriera, she then asked the complainant with which part of his body did appellant touch him with. The complainant responded by pointing to his genitalia.

Barriera further testified that she conducted a physical exam on the complainant and observed his anus to be red. Additionally, she explained to the court, that a test for

sexually transmitted diseases indicated positive results for rectal chlamydia. According to Barriera, chlamydia can only be transferred sexually through bodily fluids. She further explained that because the complainant was too young to consent to sex, the indication of a sexually transmitted disease is a definitive sign of sexual abuse. Barriera testified that the complainant could not have gotten chlamydia from anything other than sexual activity.

Detective Suni Juguenta of the Rosenberg Police Department testified that she reviewed the video recording of complainant's forensic interview. Detective Juguenta confirmed that the video recording indicated that the complainant expressed that he was anally penetrated by appellant. Detective Juguenta also reviewed the forensic evaluation and confirmed that the complainant expressed he had been anally penetrated by appellant. Based on that evidence, Detective Juguenta submitted a charge to the District Attorney's office of aggravated sexual assault in violation of section 22.021of the Texas Penal Code, a first-degree felony. *See* Tex. Penal Code Ann. § 22.021. Detective Juguenta also reviewed related reports from the Texas Department of Family and Protective Services, which indicated that while appellant was living in El Salvador, he had a reported history of sexual deviance, which included allegations of "raping his little sister."

## B.     Appellant's History with the Fort Bend County Juvenile Justice Center

Detective Juguenta further testified that her first encounter with appellant was in March 2016, when she received a report from a parent who alleged that their nine-year-old daughter had been assaulted by appellant. The report alleged that appellant pushed the girl onto the ground and forced hickeys onto her face and neck and the girl's brother had to fight appellant off her. Detective Juguenta testified that her department arrested appellant on this occasion. According to Detective Juguenta, appellant was aggressive and combative upon arrest and in the patrol vehicle.

Jina Carmona, a Fort Bend County certified juvenile probation officer testified that Fort Bend County's Juvenile Justice Center (FBJJC) first encountered appellant in November 2015 when he was charged with possession of marijuana. After the arrest, appellant was released to the custody of his father, with whom he was living at the time. Appellant was admonished that he was on a temporary monitoring status as a result of the charge. The same evening appellant was released, he was brought back into custody by the Rosenberg Police Department. Carmona testified that appellant left his father's home as soon as they returned from the detention center, in violation of the admonishments he was given. Appellant's father told law enforcement that he was unable to enforce rules at home and was unable to adequately supervise appellant. The FBJJC determined it was best for appellant to remain at the detention center.

Carmona further testified that she learned more about appellant's background after appellant's detention. Appellant had moved from El Salvador to the United States four months prior to his first arrest.

According to Carmona, appellant's mother abandoned him at the age of eight, after which appellant went to live with his mother's relatives. Appellant did not stay long with his mother's family before he left their home to live on the streets and join the MS-13 gang. Carmona further testified that MS-13 is a violent street gang.

Appellant's father did not know he had a son until 2011, when appellant was ten years old. Eventually, appellant's father decided to bring appellant to the United States to live with him.

Carmona testified that appellant stayed at the juvenile detention center for approximately three weeks, during which time he and his father received both individual and family counseling. Appellant also received assistance with his language skills, because he did not speak English and was illiterate in both English and Spanish.

5

Appellant was conditionally released into the custody of his father after three weeks in the juvenile detention center. As a condition of his release, appellant was required to continue family counseling and individual therapy and was placed on a pre-adjudication supervision program, which required him to check in on a weekly basis. Within two weeks of his release, appellant failed to check in as required, and his father reported that appellant had been missing from home for a day. Appellant was detained again and placed on a more intensive supervision program. The FBJJC also arranged for appellant to begin English as a second language classes at his public high school and moved him into sheltered classes. Carmona testified that appellant had never been in school prior to coming to the United States.

In March 2016, appellant was released home to his father, but was detained again within a week as a result of a charge of unlawful restraint, which involved appellant allegedly attacking a nine-year-old girl. According to Carmona, during this stay at the detention center, appellant was given a language tutor and a behavioral health assessment to further determine his needs. Eventually, appellant was enrolled in the Juvenile Leadership Academy, which required him to stay in a juvenile dorm for an additional six weeks. Carmona testified that appellant did well in the program and participated in his counseling. Appellant also attended the Juvenile Justice Alternative Education Program, which Carmona testified is a highly structed therapeutic community.

In October 2016, around the time appellant turned sixteen years old, he was released home with his father. This time he was given an electronic monitoring system. Carmona testified that appellant was doing well with his father for a short period of time, but that appellant made complaints regarding his father's alcohol abuse. The Department of Texas Family and Protective Services investigated the allegations but did not find any evidence of abuse. Appellant was eventually placed back inside the

juvenile dorm after his father came home from work to find a broken window and unsupervised children in his home.

During this stay in the juvenile dorm, appellant's father informed the FBJJC that appellant made threats on his life and he did not want appellant back in his home. In January 2017, appellant was released to move in with his aunt. While living with his aunt, appellant was in and out of juvenile detention dorms for violations of his supervision, including violations of his electronic monitoring and testing positive for marijuana. Carmona testified that on August 16, 2017, after the complainant's outcry of sexual assault, appellant was detained once again in the juvenile detention facility and has been in custody since that date.

Carmona further testified that appellant has always been respectful to her, but that he "cusses out" the other staff members and juveniles. He has threatened to kill staff members on multiple occasions. He has gotten into physical and verbal altercations with other juveniles. At the time of trial, appellant had been in custody for approximately one year and received over 120 write-ups for his behavior. Carmona testified that 120 is a high number of write-ups for that time period. Carmona further explained that while appellant denies currently being a member of the MS-13 gang, there were several incidents where he has "thrown up a gang sign." Additionally, while in custody, appellant attempted to give himself two different tattoos that indicated an affiliation with MS-13. When questioned about appellant's sophistication and maturity, Carmona testified that appellant acts his age and appears to be "street savvy." She explained that he progressed from speaking no English to being able to converse with her without an interpreter.

Fort Bend County's juvenile probation placement service supervisor, Steve Reprogle, testified that based upon appellant's referral history and the violent nature of the sexual offense and acts that appellant has committed, there is no available

7

residential placement within the juvenile justice system. According to Officer Reprogle, he reached out to several juvenile residential sex offender treatment facilities regarding appellant, but they all declined to accept him.

### C. Expert Testimony

The State called psychologist Dr. Karen Gollaher as its expert witness. Dr. Gollaher testified that she has a license in sex offender treatment in Texas and has conducted between 400 to 500 juvenile psychological evaluations. Dr. Gollaher interviewed appellant and conducted psychological testing, including the Minnesota Multiphasic Personality Inventory-Adolescent Spanish Version, the Test of Non-Verbal Intelligence, the Structured Assessment of Violence Risk in Youth, Risk for Sexual Reoffending, Sexual Drive Preoccupation Scale, and Antisocial Behavior Scale. Dr. Gollaher's report indicates that appellant's I.Q. was average, and that appellant is not intellectually disabled. Dr. Gollaher also testified that she learned appellant had been sexually abused by his uncle in El Salvador after his mother abandoned him. Appellant chose to live on the streets and join the MS-13 gang as opposed to staying in his uncle's home. Dr. Gollaher further testified that while appellant's background is not unique, it is more severe than the majority of the cases she sees.

Dr. Gollaher explained that appellant tested high for anti social behavior. In her report, Dr. Gollaher noted,

> [A]ppellant possesses anti social behavior and history that included engaging in violence, joining and participating in gang activity, abusing drugs, prior accusations of sexual offending, defiance towards family members in authority, failure to comply with limits on behavior in the community, psychiatric instability, poor anger management, and identification with anti-social attitudes.

According to Dr. Gollaher, there is no adequate way to protect the public from appellant because there is no treatment program that could address all his issues.

Furthermore, appellant was nearly eighteen at the time of trial and would age out of any juvenile treatment programs at the age of nineteen. Dr. Gollaher explained that fourteen months was not enough time to adequately treat appellant. In her report Dr. Gollaher states:

> [A]ppellant has demonstrated that he continues to engage in criminal activity even when provided with the opportunity of probation. In addition, it is highly improbable that he will be rehabilitated by use of procedures and facilities available to the juvenile court due to the great need he possesses and his failure to respond to supervision when it was provided.

Ultimately, Dr. Gollaher testified that she believes appellant will return to criminal behavior, either violent or sexual, if he is released into the community without intensive therapy and treatment.

### D. The Juvenile Court's Findings

At the conclusion of the hearing, the juvenile court orally announced that it determined there was probable cause that appellant engaged in aggravated sexual assault as alleged in the petition in violation of section 22.021 of the Texas Penal Code. *See* Tex. Penal Code Ann. § 22.021. The court then announced its findings under section 54.02 of the Texas Family Code, which weighed in favor of the juvenile court waiving its jurisdiction. *See* Tex. Fam. Code Ann. § 54.02. The juvenile court later signed an order specifically stating the reasons for waiver. *See Id*. § 54.02(h). This appeal timely followed. *Id*. § 56.01(c)(1)(A).

## II. LEGAL STANDARDS

### A. Standards for Waiver of Juvenile Jurisdiction

Texas juvenile courts have exclusive, original jurisdiction over cases involving what otherwise would be criminal conduct by children ten years of age or older but

under seventeen years of age. Tex. Fam. Code Ann. §§ 51.02(2)(a), 51.03(a)(1), 51.04(a). If a juvenile court determines, after an evidentiary hearing, that certain requirements are satisfied, it may waive its jurisdiction and transfer a child to the district court for criminal proceedings. *Id.* § 54.02(a), (c).

In the seminal Texas case on juvenile transfer, the Court of Criminal Appeals wrote:

> The transfer of a juvenile offender from juvenile court to criminal court for prosecution as an adult should be regarded as the exception, not the rule; the operative principle is that, whenever feasible, children and adolescents below a certain age should be "protected and rehabilitated rather than subjected to the harshness of the criminal system[.]" Because the waiver of juvenile-court jurisdiction means the loss of that protected status, in *Kent v. United States*, the United States Supreme Court characterized the statutory transfer proceedings . . . as "critically important," and held that any statutory mechanism for waiving juvenile-court jurisdiction must at least "measure up to the essentials of due process and fair treatment."

*Moon v. State*, 451 S.W.3d 28, 36 (Tex. Crim. App. 2014) (quoting *Kent v. United States*, 383 U.S. 541, 560–62 (1966)).

The statutory requirements for waiver of jurisdiction and transfer are as follows:

(1)     the child is alleged to have violated a penal law of the grade of felony;

(2)     the child was:

    (A)     14 years of age or older at the time he is alleged to have committed the offense, if the offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; or

    (B)     15 years of age or older at the time he is alleged to have committed the offense, if the offense is a felony of the     second or third degree or a state jail felony, and no     adjudication hearing has been conducted concerning that offense; and

(3)   after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

Tex. Fam. Code Ann. § 54.02(a).

In making the determination required by section 54.02(a)(3), the juvenile court shall consider, among other matters:

(1)   whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2)   the sophistication and maturity of the child;

(3)   the record and previous history of the child; and

(4)   The prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

Id. § 54.02(f).

Any combination of these criteria may suffice to support a waiver of jurisdiction; not every criterion need weigh in favor of transfer. *Moon*, 451 S.W.3d at 47 & n.78. "The trial court is bound only to consider these . . . factors in deciding whether to waive jurisdiction. The court need not find that each factor is established by the evidence." *In re D.L.N.*, 930 S.W.2d 253, 258 (Tex. App.—Houston [14th Dist.] 1996, no writ); *see also Moon*, 451 S.W.3d at 47.

If the juvenile court decides to waive jurisdiction, it must make findings of fact and specify its reasons for waiver in a written order. *See* Tex. Fam. Code Ann. § 54.02(h). The juvenile court is obligated to "show its work." *Moon*, 451 S.W.3d at 49.

**B.   Appellate Review**

Our review of a transfer order is two-pronged. First, we review the juvenile

court's specific findings of fact concerning the section 54.02(f) factors under a "traditional sufficiency of the evidence review." *Moon*, 451 S.W.3d at 47. Under a legal sufficiency challenge, we credit evidence favorable to the challenged finding and disregard contrary evidence unless a reasonable fact finder could not reject the evidence. *Moon v. State*, 410 S.W.3d 366, 371 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 451 S.W.3d 28 (Tex. Crim. App. 2014). If more than a scintilla of evidence supports the finding, the no-evidence challenge fails. *Moon*, 410 S.W.3d at 371. Our review of the sufficiency of the evidence to establish facts relevant to waiver is limited to those facts the juvenile court expressly relied upon in its transfer order. *Moon*, 451 S.W.3d at 50.

Second, we review the juvenile court's ultimate waiver decision for an abuse of discretion. *Id.* at 47. That is, in reviewing the juvenile court's conclusion that the seriousness of the offense alleged and/or the background of the juvenile called for criminal proceedings for the welfare of the community, we ask, in light of our own analysis of the sufficiency of the evidence to support the section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles. *Id.* A juvenile court abuses its discretion when its decision to transfer is essentially arbitrary, given the evidence upon which it was based. *Id.* By contrast, a waiver decision representing "a reasonably principled application of the legislative criteria" generally will pass muster under this standard of review. *Id.* at 49. "[A] juvenile court that shows its work should rarely be reversed." *Id.*

### III.   ANALYSIS

### A.   Legal Sufficiency of the Evidence Under Section 54.02(f) Factors

Appellant asserts the juvenile court abused its discretion in waiving its exclusive juvenile jurisdiction and transferring the case to district court because the evidence is legally insufficient. The juvenile court is obligated to consider the factors set forth in

section 54.02(f) to make the determination required under section 54.02(a)(3). *Moon*, 451 S.W.3d at 47. Not every factor in section 54.02(f) need weigh in favor of transfer. *Id*. Any combination of the criteria may suffice to support the juvenile court's waiver of jurisdiction. *Id.* at 47 & n.78.

### 1. Offense against person or property

Appellant is accused of an offense against the person. *See* Tex. Penal Code § 22.021.  By statute, offenses against the person are afforded greater weight in favor of transfer. Tex. Fam. Code Ann. § 54.02(f)(1). This factor is a question of law and not subject to a sufficiency review. *Moon*, 451 S.W.3d at 55.

### 2. Sophistication and maturity of appellant

The juvenile court found that appellant's levels of sophistication and maturity weighed in favor of certification. In support of its decision, the court relied on Dr. Gollaher's report and her testimony indicating that appellant has an average I.Q. and no intellectual disabilities. Officer Carmona testified that while appellant lacked a traditional education, he was extremely "street savvy."  According to Carmona, over the two years that she worked on appellant's case, he went from completely unable to converse in English to having conversations in English without a translator.

Based on the record before us, we conclude that the juvenile court had more than a scintilla of evidence to support its finding that appellant's sophistication and maturity weighed in favor of certification as an adult, and, thus, it is supported by legally sufficient evidence. *See Moon*, 410 S.W.3d at 371.

### 3. Appellant's record and history

The trial court's findings regarding appellant's record and history provide,

[A]ppellant possesses a lengthy and descriptive referral history which includes violations of the law against persons and property. Appellant

13

participated in organizations that are not law abiding and that appellant's previous gang association has allowed him to act in violation of the law.

The record is replete with references to appellant's delinquent behavior, from drug charges to the felony unlawful restraint charge. Both the unlawful restraint charge and the underlying alleged offense of aggravated sexual assault were committed while appellant was on formal probation. Appellant has received over 120 "write-ups" in the last year, which Officer Carmona testified was high. Although appellant claims he is no longer associated with MS-13, he has attempted to tattoo himself with gang-affiliated tattoos.

We find that the juvenile court had sufficient evidence to support its finding that appellant's record history weighed in favor of transfer. *See In re K.J*, 493 S.W.3d 140, 153 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (finding that the juvenile's behavior while in a detention center, coupled with violent nature of underlying offense, constituted sufficient evidence to support juvenile court's findings in support of its conclusion that appellant's record and history weigh in favor of transfer).

### 4.     Protection of public and likelihood of rehabilitation

Section 54.02(f)(4) refers to "the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court." Tex. Fam. Code Ann. § 54.02(f)(4). Dr. Gollaher testified that because of appellant's age and therapeutic needs, there is not enough time before he ages out of the juvenile system for him to be adequately rehabilitated. Furthermore, Officer Reprogle testified that the leading juvenile sex-offender facility in the country was unwilling to accept appellant because of his violent background. In addition, the FBJJC enrolled appellant in the leadership program, gave him private tutors, engaged him and his family members in therapy, but appellant's irreverent, threatening, and predatory behaviors persisted. Moreover, Dr. Gollaher

14

hypothesized that without adequate therapy, appellant will most likely return to violent and/or sexual criminal behavior. Additionally, there is some evidence that appellant may still be affiliated with the dangerous street gang, MS-13. The juvenile system does not have adequate resources to rehabilitate appellant before he turns nineteen and is released into the public.

Based on the record before us, we conclude that the juvenile court had more than a scintilla of evidence to support its finding that consideration of adequate protection of the public, as well as the unlikelihood of reasonable rehabilitation weighed in favor of certification as an adult; thus, the finding is supported by legally sufficient evidence. *See In re K.J.*, 493 S.W.3d at 154 (looking at the repeated failures of prior rehabilitative measures in finding the evidence sufficient to support the juvenile court's decision with regard to section 52.02(f)(4)).

For all of these reasons, we overrule appellant's legal sufficiency challenges to the trial court's findings under section 54.02(f)

### 2. Decision to transfer

We next consider whether the juvenile court's decision to waive jurisdiction and transfer the case was "essentially arbitrary" and "without reference to guiding rules or principles." *Moon*, 451 S.W.3d at 47.

"[T]he juvenile court that shows its work should rarely be reversed." *Id.* The record reflects the juvenile court addressed each of the section 54.02(f) factors in its order and gave specific reasons and findings in support of its decision in favor of certification. The juvenile court showed its work "by spreading its deliberative process on the record." *Moon*, 451 S.W.3d at 49.

The record reflects the juvenile court carefully considered this matter. The juvenile court made findings in its order of transfer that it considered the following

witnesses' testimony credible: (1) the complainant's mother; (2) Vanessa Barriera, the Ben Taub forensic nurse; (3) Detective Suni Jugueta; (4) Officer Jina Carmona; (5) Officer Steve Reprogle; and (6) Dr. Karen Gollaher. The court further considered Dr. Gollaher's psychological report and Officer Carmona's social evaluation and investigation. On this record, we cannot say that the juvenile court's decision was arbitrary or made without reference to guiding rules or principles. *See Moon*, 451 S.W.3d at 47. Accordingly, we find no abuse of discretion in the juvenile court's decision to waive jurisdiction and transfer appellant to district court. We overrule appellant's sole issue on appeal.

## IV. CONCLUSION

We affirm the juvenile court's order waiving juvenile jurisdiction and transferring appellant to criminal district court.


/s/ Margaret "Meg" Poissant
Justice


Panel consists of Justices Christopher, Hassan, and Poissant.