**Affirmed and Memorandum Opinion filed July 20, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00164-CV

## IN THE MATTER OF W.D.H.

**On Appeal from the County Court at Law No. 2 & Probate Court
Brazoria County, Texas
Trial Court Cause No. JV21372**

## M E M O R A N D U M    O P I N I O N

Appellant W.D.H. is a juvenile charged with aggravated robbery, robbery, and unauthorized use of a motor vehicle. *See* Tex. Penal Code Ann. §§ 29.02, 29.03, 31.07 (West 2011, 2016). Appellant was sixteen years old at the time of the alleged offenses. Appellant challenges the order granting the State's petition for the juvenile court to waive jurisdiction and transfer the case to criminal district court. *See* Tex. Fam. Code Ann. §§ 54.02, 56.01 (West Supp. 2017). In a single issue, appellant contends the juvenile court's findings of fact in its transfer order are legally and factually insufficient to support each of the juvenile court's reasons to waive jurisdiction; and in light of the evidence and testimony presented at the transfer

hearing, the juvenile court abused its discretion in waiving jurisdiction and acted without reference to guiding rules or principles and failed to represent a reasonably principled application of the legislative criteria necessary to transfer this case to adult court. Because we find the evidence sufficient to support the trial court's order, and we find no abuse of discretion in the juvenile court's decision to waive jurisdiction and transfer appellant to district court, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The State instituted this case in December 2016 by filing a petition for discretionary transfer to adult criminal court seeking to certify appellant to stand trial as an adult. The State sought certification as an adult due to the serious and severe nature of the alleged offenses, the prospects of adequate protection of the public and the doubtful likelihood of reasonable rehabilitation of appellant by the use of the procedures, services, and facilities currently available to the juvenile court.

The juvenile court conducted a hearing on the State's petition. The State presented testimony from Michael Fuller, a psychiatrist employed by the University of Texas Medical Branch at Galveston; Eric Morton and Tyson Harvey, Pearland Police detectives; and Patrick Okafor, a juvenile probation officer with the Brazoria County Juvenile Justice Department. Appellant presented testimony from his mother. The State admitted six exhibits into evidence including Dr. Fuller's psychiatric examination report, Detective Morton's investigation report, two Houston Police Department investigation reports, a witness statement from the Pearland Police Department, and a predisposition report from the Brazoria County Juvenile Justice Department.

At the conclusion of the hearing, the juvenile court orally announced the following findings:

- Probable cause exists on the four allegations contained in the

2

petition for discretionary transfer;

- Appellant was over the age of sixteen at the time the offenses were committed;

- The juvenile system does not provide appellant a chance for rehabilitation;

- The offenses are against persons and property;

- Neither the juvenile nor the public can be adequately protected if he remains in the juvenile justice system; and

- The maturity of appellant is appropriate for the transfer and the evidence testified to by Dr. Fuller would support that transfer.

The juvenile court later signed an order specifically stating the reasons for waiver. *See* Tex. Fam. Code Ann. § 54.02(h). This appeal timely followed. *Id.* § 56.01(c)(1)(A).

## A. The Investigation

Eric Morton, a Pearland Police Department detective, was assigned to investigate the aggravated robbery of a female complainant that occurred on September 29, 2016. Morton testified that Codi Shackelford was walking home from her job as a waitress at 1:30 a.m. Shackelford was walking through a grocery store parking lot when she saw a car pull up next to her. Three men got out of the car, displayed a weapon, and took her personal belongings. Shackelford described the car as a maroon passenger car. The assailants took Shackelford's work apron, food she was bringing home from work, a jacket, a credit card, approximately $100.00 in cash, and a BLU smart phone. Morton testified that BLU is the brand name of the phone.

Shackelford described what the three men were wearing. She said the driver was wearing a black long-sleeve shirt carrying a black, thin handgun. She reported that the driver "racked the slide" of the gun, but Morton's report reflects no bullet

ejected. The other two men were wearing jackets. After the men took Shackelford's belongings, she walked home and called the police. Shackelford did not know any of the assailants.

During his investigation Morton obtained video from a surveillance camera at the grocery store. In the video Morton saw the maroon passenger car, but was unable to determine the make and model. Morton also saw Shackelford walking in the video, but was unable to see the alleged robbery.

Morton's investigation led him to two reports of robberies from the Houston Police Department. The first report was of a stolen car, which was stolen September 24, 2016. Morton linked that stolen car to the robbery of Shackelford in Pearland through another robbery in Houston. The Houston robbery took place the day after the Pearland robbery on September 30, 2016. In the Houston robbery, the victim was struck in the head with an unknown weapon and her belongings were stolen from her. The Houston victim remembered two digits of the assailants' license plate number. Houston police officers found the car, and were involved in a pursuit. After stopping the car, Houston police found four suspects and a BLU brand smart phone. The BLU phone matched the description of Shackelford's phone. Houston police arrested the four men in the car, including appellant.

A photographic lineup was prepared for Shackelford to view. Detective Tyson Harvey submitted the lineup to Shackelford. The Pearland police report, the two Houston police reports, and the photo array were admitted into evidence without objection. When the photo array was shown to Shackelford, she identified appellant as one of her assailants. She did not know whether appellant was the driver of the car or one of its passengers, but reported that appellant was the one with the handgun.

Morton recovered the phone that was found in the car in Houston. Shackelford described her phone as having a crack in the screen, which matched the phone found

4

in the car. Morton has been unable to obtain the phone since the arrest because "[i]t's lost somewhere in Houston property[.]" The car found in Houston was a maroon Ford Focus, which matched Shackelford's description. Morton interviewed the owner of the stolen car who told him it was valued at between $7,000.00 and $8,000.00. A BB gun was found in the stolen car.

The Houston complainant also identified appellant, but stated that he stayed in the car while two other men robbed her.

Detective Tyson Harvey of the Pearland Police Department testified that Morton contacted him to administer the photo lineup. Harvey was not told the identities of any of the photos in the array. Shackelford identified the photo in position number three, which was appellant. Harvey asked Shackelford to describe how certain she was in her identification. Shackelford responded that she was "one hundred percent sure" that the person she identified was the person with the gun. No video recording was made of Shackelford's identification because Harvey took the photo array to Shackelford's apartment rather than administer it at the police station. Another detective was also present at the time of the identification.

## B. Expert Testimony

The State called psychiatrist Dr. Michael Fuller as its expert witness. Dr. Fuller frequently performs evaluations on juveniles whom the State is seeking to transfer to adult court. Dr. Fuller conducted a psychiatric examination of appellant prior to the transfer hearing, and his report was admitted into evidence. Dr. Fuller's findings were based on obtaining a psychiatric and psychological social history, a mental status examination, as well as probing various areas of psychological function such as depression and psychosis. Dr. Fuller found that appellant was cooperative and participated fully with the examination. He learned that appellant was in the ninth grade, had not been previously subjected to any forms of abuse or

5

neglect, had repeated eighth grade, did not have a history of significant or apparent cognitive difficulties in school, and enjoys reading and playing basketball.

Appellant denied any previous history of psychiatric or psychological issues that were diagnosed and/or treated. Appellant told Dr. Fuller that he had tried marijuana in the past, but denied tobacco, alcohol, or other drug use. Appellant's speech was normal and reflected an individual of at least average intelligence. Appellant's mood and affect were good. Appellant's cognitive functioning was in the average to above average range. He was able to perform all aspects of memory and processing. Dr. Fuller found that appellant was a reasonably well-informed young man who was aware of his circumstances in a thoughtful way, aware of the consequences he was facing, and appeared to be able to relate effectively with his attorney if he chose to do so. Dr. Fuller concluded that appellant is a reasonably thoughtful, intelligent, and mature young man and that he saw no red flags that would suggest that it would be inappropriate for him to be considered for transfer.

## C.    Additional Witnesses

Patrick Okafor, a juvenile probation officer with the Brazoria County Juvenile Justice Department, testified that he was familiar with appellant. Okafor, as an intake officer, works with newly referred juveniles, monitors them while they are on conditions of release, or, if they are detained, checks on their behavior while they are in detention. Okafor did not have any direct involvement in the investigation of the alleged offenses.

In preparing a social history report known as a predisposition report, Okafor spoke with appellant about his family history and hobbies, interviewed his mother, made contacts with school officials, and gathered school records. Okafor described appellant as straightforward in his interview with the disposition of a normal teenager. Okafor learned that appellant went to Yates High School and was close

with his mother growing up. Appellant's school records reflected ten absences for full or partial days for a period between August 22 and October 3. Appellant was failing "quite a few of his classes." Okafor's predisposition report was admitted into evidence without objection.

During the preparation of the predisposition report appellant self-reported marijuana usage. To Okafor's knowledge appellant was not tested when he was brought into detention. Appellant does not have much contact with his father because his father is incarcerated. Appellant lives with his mother, stepfather, and siblings, and has a close relationship with his mother. Okafor was unable to conduct an evaluation of appellant's home environment because his attempts to contact family members other than appellant's mother were unsuccessful. As to emotional responses, appellant reported getting angry or upset when he learned one of his friends had died. Okafor reviewed Dr. Fuller's report and agreed with Dr. Fuller that appellant is a reasonably intelligent and mature young man.

While in detention, appellant has been disruptive. During four months of detention, he had 26 disciplinary referrals for various offenses such as cursing the staff and refusing to follow instructions. One of the referrals noted that he had threatened the staff. Specifically, appellant was reported to have said, "[I]f this was Harris County, I would 'F' you up[.]" Two altercations with other juveniles were resolved before anyone was hurt. Appellant's behavior has been consistent throughout his detention, but escalating, becoming more defiant after a while. Most of appellant's phone calls are to his mother. Appellant expressed to Okafor that he wants to go home. Appellant is receiving education while in detention, but some of his discipline referrals have been at school, cursing teachers. Appellant's grades have improved; he was failing two classes at the time of the hearing.

With regard to options for appellant Okafor noted that appellant would turn

seventeen March 19, 2017. At the time of the alleged offense appellant was sixteen. Okafor testified that due to the severity of the alleged offenses and appellant's age, the juvenile department is recommending certification to be tried as an adult. Okafor testified that the juvenile department is not equipped to deal with juveniles who commit numerous violent felonies at an older age. A determinant sentence probation would not be appropriate in this case due to the severity of the alleged offenses, appellant's age, and appellant's behavior while in detention.

The options available for appellant in juvenile detention allow for residential treatment until appellant turns eighteen. The treatment is a nine-month treatment plan with follow-up treatment. Okafor testified that with appellant's age there would not be sufficient time to treat him before he turned eighteen. Although appellant could be sentenced to confinement in the Texas Juvenile Justice Department until he turned nineteen, the department does not recommend that option due to the severity of the alleged offenses.

Okafor was not aware of any prior criminal history of appellant. He was also not aware of any good behavior while appellant was in detention. The facility will report good behavior or good days, but have reported none for appellant.

Appellant's mother testified in his behalf. She testified that appellant's father is incarcerated and appellant has seen him probably six or seven times during his lifetime. Growing up appellant was "a good kid." He was spontaneous and enjoyed making his own money by doing odd jobs in the neighborhood. Appellant was well-behaved and is currently in the ninth grade, having been held back three times in sixth, seventh, and eighth grades. Appellant has not been diagnosed with learning disabilities, nor has he received therapy or counseling prior to entering juvenile detention.

Appellant's mother did not know the other men in the car with appellant and

did not know he was associating with them. Appellant did not have discipline issues in school other than the times the teacher would discipline him when he would "speak up for himself." Appellant had never been arrested prior to the arrest in this case. The mother described an incident four to six months earlier when appellant came home crying and upset because a friend had died. Appellant's mother asked that he remain in juvenile court.

Appellant's mother testified that appellant was at home asleep on the night the alleged offense occurred. She testified that appellant likes to sleep on the couch and that she saw him on the couch at approximately 1:20 in the morning using his phone to communicate with his girlfriend. She told appellant to go to sleep because he had school in the morning.

## II.    LEGAL STANDARDS

### A.    Standards for Waiver of Juvenile Jurisdiction

Texas juvenile courts have exclusive, original jurisdiction over cases involving what otherwise would be criminal conduct by children ten years of age or older but under seventeen years of age. Tex. Fam. Code Ann. §§ 51.02(2)(a), 51.03(a)(1), 51.04(a) (West Supp. 2017). If a juvenile court determines after an evidentiary hearing that certain requirements are satisfied, it may waive its jurisdiction and transfer a child to the district court for criminal proceedings. *Id.* § 54.02(a), (c).

In the seminal Texas case on juvenile transfer, the Court of Criminal Appeals wrote:

> The transfer of a juvenile offender from juvenile court to criminal court for prosecution as an adult should be regarded as the exception, not the rule; the operative principle is that, whenever feasible, children and adolescents below a certain age should be "protected and rehabilitated rather than subjected to the harshness of the criminal system[.]"

> Because the waiver of juvenile-court jurisdiction means the loss of that protected status, in *Kent v. United States*, the United States Supreme Court characterized the statutory transfer proceedings . . . as "critically important," and held that any statutory mechanism for waiving juvenile-court jurisdiction must at least "measure up to the essentials of due process and fair treatment."

*Moon v. State*, 451 S.W.3d 28, 36 (Tex. Crim. App. 2014) (quoting *Kent v. United States*, 383 U.S. 541, 560–62 (1966)).

The statutory requirements for waiver of jurisdiction and transfer are as follows:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

  (A) 14 years of age or older at the time he is alleged to have committed the offense, if the offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; or

  (B) 15 years of age or older at the time he is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, and no adjudication hearing has been conducted concerning that offense; and

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

Tex. Fam. Code Ann. § 54.02(a).

In making the determination required by section 54.02(a)(3), the juvenile court shall consider, among other matters:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) The prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

Tex. Fam. Code Ann. § 54.02(f).

Any combination of these criteria may suffice to support a waiver of jurisdiction; not every criterion need weigh in favor of transfer. *Moon*, 451 S.W.3d at 47 & n.78. "The trial court is bound only to consider these . . . factors in deciding whether to waive jurisdiction. The court need not find that each factor is established by the evidence." *In re D.L.N.*, 930 S.W.2d 253, 258 (Tex. App.—Houston [14th Dist.] 1996, no writ); *see also Moon*, 451 S.W.3d at 47.

If the juvenile court decides to waive jurisdiction, it must make findings of fact and specify its reasons for waiver in a written order. *See* Tex. Fam. Code Ann. § 54.02(h). The juvenile court is obligated to "show its work." *Moon*, 451 S.W.3d at 49.

## B.    Appellate Review

Our review of a transfer order is two-pronged. First, we review the juvenile court's specific findings of fact concerning the section 54.02(f) factors under a "traditional sufficiency of the evidence review." *Moon*, 451 S.W.3d at 47. Under a legal sufficiency challenge, we credit evidence favorable to the challenged finding and disregard contrary evidence unless a reasonable fact finder could not reject the evidence. *Moon v. State*, 410 S.W.3d 366, 371 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 451 S.W.3d 28 (Tex. Crim. App. 2014). If more than a scintilla of

evidence supports the finding, the no-evidence challenge fails. *Moon*, 410 S.W.3d at 371. Under a factual sufficiency challenge, we consider all the evidence presented to determine if the court's findings are against the great weight and preponderance of the evidence so as to be clearly wrong or unjust. *Id.* Our review of the sufficiency of the evidence to establish facts relevant to waiver is limited to those facts the juvenile court expressly relied upon in its transfer order. *Moon*, 451 S.W.3d at 50.

Second, we review the juvenile court's ultimate waiver decision for an abuse of discretion. *Id.* at 47. That is, in reviewing the juvenile court's conclusion that the seriousness of the offense alleged and/or the background of the juvenile called for criminal proceedings for the welfare of the community, we ask, in light of our own analysis of the sufficiency of the evidence to support the section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles. *Id.* A juvenile court abuses its discretion when its decision to transfer is essentially arbitrary, given the evidence upon which it was based. *Id.* By contrast, a waiver decision representing "a reasonably principled application of the legislative criteria" generally will pass muster under this standard of review. *Id.* at 49. "[A] juvenile court that shows its work should rarely be reversed." *Id.*

## III.   ANALYSIS

## A.   Order Containing Case-specific Facts in Support of the Transfer

Appellant first argues that the transfer order did not state the factual underpinnings of the court's conclusions and grounds for transfer. We disagree. In its transfer order, the juvenile court noted that it was considering the factors mandated by section 54.02(f) of the Juvenile Justice Code and then made the following findings and determinations:

- Appellant was alleged to have committed aggravated robbery under Texas Penal Code section 29.03; robbery under section 29.02; theft under section 31.03; and unauthorized use of a vehicle under section 31.07

- Appellant was sixteen years old at the time of the hearing;

- Appellant was sixteen years old at the time of the offenses;

- No adjudication hearing had been conducted previously;

- The parties were properly notified of the hearing;

- Prior to the transfer hearing, a "complete diagnostic study" of appellant had been completed by Dr. Michael Fuller;

- The alleged offenses are against persons and property;

- There was probable cause to believe that appellant committed two separate felony aggravated robbery offenses involving firearms within a few days of each other;

- Appellant was of sufficient sophistication and maturity to be tried as an adult and could aid an attorney in his defense;

- Appellant has not reported a learning disability, has not been diagnosed with any mental disorders, and does not have issues of drug or alcohol abuse;

- The psychiatric assessment demonstrated that appellant is of average intelligence, is logical, coherent, and has goal-directed thought processes;

- Appellant has adequate judgment ability to make sound decisions;

- Appellant has significant and appropriate insight into the seriousness of the charges against him;

- Appellant's records, previous history, and the extreme and severe nature of the alleged offenses made the prospects of adequate protection for the public and likelihood of reasonable rehabilitation by the use of the juvenile justice system doubtful;

- After considering testimony, diagnostic study, social evaluation, and full investigation of appellant, his circumstances, and the circumstances of the alleged offenses, as well as the seriousness of the alleged offenses and background of Appellant, the welfare

13

of the community required criminal proceedings.

In contrast to these case-specific findings, in *Moon*, the only reason specifically stated in the juvenile court's order to justify the waiver of jurisdiction was that the offense alleged was a serious one, and the only fact specified in support of this reason was that the offense alleged was committed against the person of another. *Moon*, 451 S.W.3d at 50; *see also Guerrero v. State*, 471 S.W.3d 1, 4 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Texas Family Code section 54.02(a)(3) states that a child may be transferred if the welfare of the community requires criminal proceedings because of the seriousness of the offense alleged or the background of the child. In this case the juvenile court stated both reasons in its transfer order. Appellant argues that, "[b]ecause the Court stated both it is necessarily required to support both with findings of fact." We disagree.

Section 54.02(f) provides that the juvenile court must consider four non-exclusive factors in determining whether to certify a juvenile to be tried as an adult:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

Tex. Fam. Code Ann. § 54.02(f).

All four of the section 54.02(f) criteria need not weigh in favor of transfer in order for a juvenile court to waive its jurisdiction. *Moon*, 451 S.W.3d at 47. Any combination of these criteria may suffice. *Id*. at 47 n. 78; *Matter of S.G.R.*, 496 S.W.3d 235, 238 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

14

Appellant argues the juvenile court's order is not sufficiently specific to justify waiving jurisdiction and transferring the case to adult criminal court. In this case, the transfer order specifically references, among other things, appellant's record and previous history and the "extreme and severe nature" of the offenses alleged; it does not recite the finding in conclusory fashion in contrast to the finding in *Moon*. *See Moon*, 451 S.W.3d at 50. The juvenile court noted that the offense alleged in Brazoria County was "a stranger robbery," in which three men demanded money and "groped the victim's body, looking for more money." The court further noted that appellant was apprehended after another felony aggravated robbery was committed in Harris County where another female was robbed at gun point. The victim was physically assaulted and appellant was not apprehended until after engaging in a high-speed chase.

The juvenile court made findings as to appellant that provided a "sure-footed and definite basis from which an appellate court can determine that its decision was in fact appropriately guided by the statutory criteria, principled, and reasonable." *Moon*, 451 S.W.3d at 49. As such, the juvenile court's order contains case-specific facts and was appropriately guided by the statutory criteria. *See Matthews v. State*, 513 S.W.3d 45, 56–59 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). We turn to whether the evidence in this case supports the juvenile court's factual findings.

**B.    Section 54.02(f) Factors**

Appellant asserts the juvenile court abused its discretion in waiving its exclusive juvenile jurisdiction and transferring the case to district court because the evidence is legally and factually insufficient to support the court's section 54.02(f) findings. Appellant argues the evidence is legally and factually insufficient to support the juvenile court's findings of (1) appellant's sophistication and maturity; (2) appellant's record and previous history; (3) the lack of prospects of adequate

protection of the public from appellant and the doubtful likelihood of the juvenile system to rehabilitate appellant. Appellant does not challenge the sufficiency of the evidence to support the finding that the alleged offenses were against persons and property or the finding of probable cause.

The juvenile court is obligated to consider the factors set forth in section 54.02(f) to make the determination required under section 54.02(a)(3). Not every factor in section 54.02(f) need weigh in favor of transfer. *Moon*, 451 S.W.3d at 47. Any combination of the criteria may suffice to support the juvenile court's waiver of jurisdiction. *Id.* at 47 & n.78.

### 1.    Sufficiency of the evidence

### a.    Sophistication and maturity of appellant

The juvenile court found that appellant's levels of sophistication and maturity weighed in favor of certification. In support of its decision, the court found appellant attends high school, did not report a learning disability, has not been diagnosed with mental disorders, and does not have issues of drug or alcohol abuse. The juvenile court further relied on the expert's testimony and report noting that the psychiatric assessment demonstrated that appellant is of average intelligence, is logical, coherent, and has goal-directed thought processes. The juvenile court noted that appellant has adequate judgment to make sound decisions, is able to interpret abstract thoughts at a slightly below average level, and has significant and appropriate insight into the seriousness of the charges against him.

Based on the record before us, we conclude that the juvenile court had more than a scintilla of evidence to support its finding that appellant's sophistication and maturity weighed in favor of certification as an adult and, thus, it is supported by legally sufficient evidence. *See Moon*, 410 S.W.3d at 371.

16

A review of the factual sufficiency requires us to consider any evidence contrary to the juvenile court's determination and determine if, after weighing all the evidence, the "juvenile court's finding that appellant was of sufficient sophistication and maturity to be tried as an adult was not so against the great weight and preponderance of the evidence as to be manifestly unjust." *In re K.J.*, 493 S.W.3d 140, 151 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *In re K.D.S.*, 808 S.W.2d 299, 303 (Tex. App.—Houston [1st Dist.] 1991, no pet.)). Having reviewed all of the evidence under the appropriate standard, we hold the juvenile court's determination is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Matter of C.M.M.*, 503 S.W.3d 692, 708 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (finding psychiatrist's testimony that appellant was able to evaluate right from wrong offered more than a scintilla of evidence to support the juvenile court's findings of sophistication and maturity).

### b. Appellant's record and history

Appellant asserts the evidence of appellant's record and previous history admitted at the hearing was legally and factually insufficient to support the transfer. Appellant argues that other than the alleged series of crimes giving rise to this action he has no prior arrests, detentions, or charges. The State argues that despite a lack of prior history in the juvenile system, the record supports the juvenile court's finding that appellant's record and history support a finding of transfer to district court.

The State points to appellant's admission of prior experimentation with marijuana, the series of aggravated robberies for which appellant is charged, and appellant's numerous disciplinary issues while in detention as evidence of appellant's record and history in support of the juvenile court's finding. The State cites *In re K.J.*, 493 S.W.3d at 153, in support of its argument that appellant's behavior while in detention is evidence in support of this factor. In *K.J.*, the appellant

17

had been charged with five offenses at the age of twelve. *Id.* The appellant also violated his probation and admitted to gang membership. *Id.* The record in *K.J.* reflected that the appellant was "out of control" at home, would not follow his grandmother's house rules, and was suspended from school for behavior issues. *Id.* The court held that appellant's behavior while in detention, coupled with the violent nature of his most recent felonies, demonstrated escalation of risky and violent behavior. *Id.*

This case is distinguishable from *In re K.J.* in that K.J. had a prior record of violence in addition to disciplinary issues while in detention. On this record there is no evidence of violence prior to the alleged commission of the offenses for which appellant was charged. In this case, the juvenile court found that appellant's records, previous history, and the extreme and severe nature of the alleged offenses made the prospects of adequate protection for the public and likelihood of reasonable rehabilitation by the use of the juvenile justice system doubtful. No evidence was admitted of a prior record of offenses or violent behavior.

Appellant relies on *In the Matter of R.X.W.*, No. 12-16-00197-CV; 2016 WL 6996592 (Tex. App.—Tyler Nov. 30, 2016, no pet.) (mem. op.), for the proposition that the lack of evidence supporting the trial court's finding with regard to appellant's prior record requires this court to reverse the juvenile court's order. However, in *R.X.W.*, the juvenile court only cited the prior history of the child as its reason for transfer, but included factual findings that supported seriousness of the offense. *Id.* at *3. In this case, however, the juvenile court cited not only appellant's prior history, but also the seriousness of the offense. Therefore, the lack of evidence to support the finding of appellant's prior history is not necessarily fatal to the juvenile court's order.

Accordingly, we disregard the portion of the juvenile court's finding that

relied on appellant's record and prior history in considering whether the record contains sufficient evidence to support the juvenile court's ultimate determination that the juvenile system could adequately protect the public and reasonably rehabilitate appellant. *See Matter of E.Y.*, No. 14-16-00475-CV; 2016 WL 7108407 at *11 (Tex. App.—Houston [14th Dist.] Dec. 6, 2016, no pet.) (mem. op.) (we defer to the juvenile court's findings unless the record contains no evidence to support them).

### c.       Protection of public and likelihood of rehabilitation

Appellant asserts there was no evidence of the prospects of adequate protection of the public or the likelihood of rehabilitation admitted at the hearing. Section 54.02(f)(4) refers to "the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court." Tex. Fam. Code Ann. § 54.02(f)(4).

The record reflects evidence on which the juvenile court could have found that this factor weighs in favor of certification. The juvenile court found probable cause that appellant committed an aggravated robbery against a woman walking alone in a parking lot late at night. There was also evidence that the car appellant allegedly use to commit the offense was stolen. There was further evidence tying appellant to another aggravated robbery of another woman walking alone at night.

Appellant contends that neither Dr. Fuller nor Okafor presented evidence in support of this factor. While Dr. Fuller did not testify to adequate protection of the public and reasonable likelihood of rehabilitation, Okafor testified extensively on appellant's record of disciplinary issues while in detention and the insufficient nature of the options available to the juvenile system to rehabilitate appellant. Specifically, Okafor testified that during the four months appellant had been in juvenile detention

19

he received 26 disciplinary referrals including one referral that noted appellant threatened the staff at the detention center. Appellant also was involved in two altercations with other juveniles that were "broken up" by staff before anyone was hurt.

Okafor further testified that the juvenile justice system is not equipped to deal with juvenile offenders who commit numerous violent felonies at an older age. Okafor addressed what options were available for appellant at his age including a nine-month residential treatment program, and detention in the Juvenile Justice Department until appellant turned nineteen. Okafor rejected both options due to the severity of the alleged offenses.

Okafor also testified that a determinant sentence, codified in section 54.04 of the Family Code, would not be appropriate due to the severity of the alleged offenses. That statute permits a judge or jury in certain cases to sentence a juvenile to a term of confinement that exceeds the length of time the individual is eligible to spend in the juvenile justice department. Such a sentence is served in the juvenile justice department or other authorized facility with a possible transfer to the Texas Department of Criminal Justice. *See* Tex. Fam. Code Ann. § 54.04(d)(3) (West Supp. 2017). The juvenile court was entitled to rely on Okafor's conclusion that sentencing appellant as an adult if he is found guilty was not contraindicated. *See Moon*, 410 S.W.3d at 375.

Based on the record before us, we conclude that the juvenile court had more than a scintilla of evidence to support its finding that consideration of adequate protection of the public as well as the likelihood of reasonable rehabilitation weighed in favor of certification as an adult; and, thus, the finding is supported by legally sufficient evidence.

Considering any evidence that is contrary to the juvenile court's determination

and, after weighing all the evidence, disregarding the court's finding with regard to appellant's record, we hold the court's finding under this factor was not against the great weight and preponderance of the evidence.

## 2. Decision to transfer

We next consider whether the juvenile court's decision to waive jurisdiction and transfer the case was "essentially arbitrary" and "without reference to guiding rules or principles." *Moon*, 451 S.W.3d at 47.

The record reflects the juvenile court addressed each of the section 54.02(f) factors in its order and gave specific reasons and findings in support of its decision that three of the factors weighed in favor of certification. The juvenile court showed its work "by spreading its deliberative process on the record." *Moon*, 451 S.W.3d at 49. "[T]he juvenile court that shows its work should rarely be reversed." *Id.*

The record reflects the juvenile court carefully considered this matter. The juvenile court considered the expert testimony of Dr. Fuller in addition to the investigating officer's testimony. The court further considered Dr. Fuller's report, the Pearland and Houston police departments' incident reports, and the juvenile justice predisposition report. On this record, we cannot say that the juvenile court's decision was arbitrary or made without reference to guiding rules or principles. *See Moon*, 451 S.W.3d at 47. Accordingly, we find no abuse of discretion in the juvenile court's decision to waive jurisdiction and transfer appellant to district court. We overrule appellant's sole issue on appeal.

## IV.    CONCLUSION

We affirm the juvenile court's order waiving juvenile jurisdiction and transferring appellant to criminal district court.


/s/    William J. Boyce
        Justice


Panel consists of Justices Boyce, Donovan, and Jewell.