**AFFIRM; and Opinion Filed August 23, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-19-00237-CV**

### IN THE MATTER OF H.F., A JUVENILE

**On Appeal from the 305th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JD-18-01302-X**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Schenck

H.F. is a juvenile charged with one count of capital murder and two counts of aggravated robbery against three different complainants in three separate incidents, occurring on three consecutive days. TEX. PENAL CODE ANN. §§ 19.03, 29.03. Upon petition of the State, the juvenile court certified H.F. to be tried as an adult and transferred his case to a criminal district court. On appeal, H.F. contends the juvenile court abused its discretion in waiving its jurisdiction and transferring his case because the evidence introduced at the hearing on the State's petition established there are sufficient safeguards in place for the public and a very high probability of rehabilitation for H.F. by use of procedures, services, and facilities currently available to the juvenile court. We affirm the transfer order. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

BACKGROUND

H.F. was charged with three first-degree felony offenses alleged to have occurred on October 21, 22, and 23 of 2018. He was sixteen years old at the time. In November 2018, the State filed a petition for discretionary transfer asking the juvenile court to waive its jurisdiction and transfer H.F.'s case to adult criminal court. See TEX. FAM. CODE ANN. § 54.02. The juvenile court ordered the psychological evaluation and social study required by family code section 54.02(d). H.F. met with the probation officer assigned to conduct the social study but refused to meet the psychologist assigned to conduct the psychological evaluation.

After the evaluation was completed, the juvenile court conducted a hearing regarding the State's petition seeking to transfer H.F.'s case to a criminal district court.[1] At the hearing, the juvenile court took judicial notice of the Social Evaluation and Investigation Report and the memorandum of psychologist Dr. John Pita, stating H.F. refused to be evaluated. The report and memorandum were already on file with the court.

The Social Evaluation and Investigative Report indicates H.F. had been arrested on five prior occasions by the Dallas, Lancaster, and Wilmer Police Departments. He had eight referrals to the Dallas County Juvenile Department, which included multiple adjudications, his probation being extended and him being ordered to several placement facilities. The report sets forth the current offenses of capital murder and aggravated robbery and the circumstances surrounding those offenses—which are detailed more fully below in the recounting of the detectives' testimony—as well as identifying the prior offenses, including terroristic threats, violation of probation, burglary of habitation, evading arrest, criminal mischief, and engaging in organized criminal activity, and the dispositions of those offenses. The report identifies prior placements at the Dallas County Youth Village, the START Program and the Dallas County Juvenile Residential

---

[1] Because H.F. refused to participate in the psychological evaluation, the juvenile court did not have the benefit of that evaluation.

Drug Treatment Program and set forth various problems H.F. had during those placements. The report indicates that while H.F. was on probation he failed to participate in his court-ordered programs, used illegal drugs, committed additional offenses, and endangered the lives of himself and others. The officer who prepared the report states his belief H.F.'s level of sophistication is excessive, as compared to others of a similar age. The report indicates H.F. has a history of associating with older individuals who have criminal histories and are negative influences. The report concludes that the prospects of adequate protection of the public and the likelihood of rehabilitation with service, procedures, and facilities currently available to the juvenile court are remote with respect to H.F. The report further indicates that, "[d]ue to the subject's pending referrals; his current age; his drug use history; his continued association with older and negative peers who have criminal histories; his continued lack of respect for authority figures and his conditions of probation; his lack of respect for a person's life; and his continued history of delinquent conduct, rehabilitation of the subject within the Juvenile Justice System is remote." The probation officer concludes the report with a recommendation that the State's petition for discretionary transfer be granted.

In addition to the social study, at the hearing, the State presented testimony from three detectives and the probation officer who conducted the study. H.F. presented testimony from a friend of the family, his mother, and a clinical coordinator for the Dallas County Juvenile Department Residential Drug Treatment Program.

At the hearing, Detective Adam Mayorga testified he investigated a robbery that occurred during the early hours of October 21, 2018 at a gas station in Irving. Two males were alleged to have approached a 72-year-old woman while she was feeding cats at the gas station, which was closed at the time. One of the men pointed a gun at her and demanded the keys to her car. She ran to a convenience store located across the street and called 9-1-1. The men took off in her car,

which was later found in the city of Wilmer on the side of the highway. Detectives found H.F.'s fingerprints on the driver's side door of the car. Detective Mayorga testified that detectives retrieved the surveillance video from the gas station which showed two males approaching the complainant, with one of them pointing a gun at her before she fled on foot. Detective Mayorga indicated he watched the video of a Lancaster Police Department officer's interview of H.F. During that interview, H.F. confessed to having committed the offense. He refused to identify his accomplice.

Detective Jason Tapscott testified he investigated another robbery that occurred on October 22, 2018 at approximately 8:30 p.m. at an apartment complex in Lancaster. The complainant stated she was approached by two young Hispanic males wearing red hoodies. She stated one of the males pointed a gun at her head and the other said, "shoot her man, shoot her man, she's lying." They took her purse and car. The car was recovered in Dallas on Zang Boulevard near Saner Road. Detective Tapscott sat in on the interview of H.F. in connection with the investigation of a murder that occurred the next day. During the interview, H.F. initially claimed he did not remember if he was involved in the Lancaster robbery because he was high on "lean," but later confessed to the robbery. H.F. described the vehicle, what was taken and admitted that he was the individual who pointed the gun at the complainant.

Detective Jay Rohack testified he investigated the murder of Larry Hearn, which occurred on October 23, 2018. Hearn lived in Lancaster and had returned to his home on his lunch break. His neighbors reported hearing a single gunshot. They went outside and saw Hearn laying on the ground between the street and the sidewalk and noticed Hearn's vehicle, which was parked on the street, was running. The neighbors called the Lancaster Police Department. When the police arrived, they observed Hearn was bleeding, and administered CPR until paramedics arrived. After paramedics arrived, Hearn was transported to a hospital where he was later pronounced dead.

Police received an anonymous tip that the offense had been committed by a Hispanic male identified by his first name only, that name being the same as H.F.'s. The tipster told police the individual came out of the woods, got into an argument with Hearn, and shot him. Given the information relayed to Detective Rohack, including the Hutchins Police Department's notification that it was investigating H.F. and his brother concerning numerous robberies, he suspected H.F. might be the individual the tipster identified. He contacted H.F.'s mother by telephone and asked her where H.F. was. She said she did not know and indicated that he had been released from a detention center two weeks prior, was on probation, and took off running as soon as he got home. She advised that the Hutchins Police Department had H.F.'s brother in custody and they were looking for H.F. H.F.'s mother stated she could not control H.F. or his brother. Another anonymous tipster reported H.F. could be found at an apartment complex located in South Dallas. Thereafter, with a few additional tips, Dallas police found H.F. They brought him into custody and took him to the Lancaster Police Department.

Detective Rohack testified that, thereafter, Judge Henry Campbell was contacted and H.F. was placed in the juvenile processing room. Detectives Rohack and Tapscott were present when H.F. gave a statement after waiving his Miranda rights. H.F. spoke not only about shooting Hearn, but also about the offenses that occurred on October 21 and 22. Detective Rohack showed H.F. a picture of Hearn and H.F. acknowledged that he tried to rob Hearn of his vehicle at gun point and that he shot him after he gave him the wrong set of keys. At that point, H.F. claimed he ran into nearby woods and threw away the gun. H.F. told the detectives he was the one with the gun in the October 21 and 22 robberies. Detective Rohack further stated he asked H.F. if he had anything to say to Hearn's family, and H.F. replied "no". Detective Rohack further asked, "do you not care? Do you not have any remorse?" to which H.F. responded, "no, I don't care about them."

Detective Rohack also testified that his department had investigated H.F. in connection with other robberies and that H.F. has a pattern of law offending. Detective Rohack indicated he believed H.F. was a member of, or associated with, a gang calling themselves East Side Homeboys. He expressed his belief the public needs protection from H.F.

Dallas County probation officer Chris Jefferson testified he generated the Social Evaluation and Investigative Report on H.F. He stated that the probation department recommends that the court grant the State's petition for discretionary transfer. He indicated H.F. was born on May 24, 2002 and has been involved in the juvenile justice system regularly since the age of 12, he has been arrested 5 times by Dallas, Wilmer and Lancaster Police Departments and has had 8 referrals to the Juvenile Department and multiple adjudications. He further indicated that H.F. had been placed on probation on several occasions. After his first probation, officers had problems with him reporting, using illegal drugs, behavior problems, and committing new offenses. H.F. was placed in the START Program, which he successfully completed after initially having problems. Once released from START, H.F. committed new offenses, and was brought back into probation, adjudicated, and then sent to the Dallas Juvenile Department Residential Drug Treatment Program.

While in the drug treatment program, H.F. exhibited a pattern of behavioral problems. He was self-medicating, was assaultive towards peers and staff, and attempted to tie a pillow case around his neck. Eventually, he got on the right track, although he relapsed and took another resident's medication, but ultimately progressed to obtain the necessary levels for discharge. He was released from that placement on September 11, 2018, a little over a month before committing the latest series of offenses. Once released in September 2018, H.F. violated curfew, attended school irregularly, and ran away from home. He also used drugs. Then, H.F. came back to the department on the current charges. Officer Jefferson concluded that, given H.F.'s background and the seriousness of the offenses, for the welfare of the community criminal proceedings are required.

Officer Jefferson further indicated that the likelihood of rehabilitation of H.F. by the use of procedures, services and facilities currently available to the Juvenile Court is remote. Officer Jefferson confirmed on cross examination that the Texas Juvenile Justice Department has a capital offender program that is designed to meet the needs of offenders like H.F. He also confirmed that, if the court placed H.F. in that program, he would be able to stay there until he reached the age of 19.

H.F. called Arturo Rodriguez Maldonodo to testify on his behalf. Maldonodo lives in Nuevo Laredo Mexico and is a Pastor of a church there. He is a friend of H.F.'s father. He testified that, at some unidentified point in time, H.F. lived with him for a period of 3 months while he reunited with his father. Thereafter, H.F. lived in another house in Nuevo Laredo for approximately 5 months. Maldonodo stated H.F.'s behavior improved while living with him and that H.F. responded to redirection.

H.F. called his mother to testify. She indicated she believed H.F.'s behavior was caused by mental issues. She asked to have H.F. maintained in the juvenile system.

H.F. called Dr. Katie Chadwick, a clinical coordinator for the Dallas County Juvenile Department Residential Drug Treatment Program. She testified H.F. entered the program on March 9, 2018 and was discharged on September 11, 2018. She explained the primary focus of H.F.'s therapy was substance abuse, but he also received mental health support, and art therapy. She stated that when H.F. entered the program he had a lot of ups and downs behaviorally and that over time he improved. She further stated, although H.F. made significant improvement while he was in the drug treatment program and completed the program successfully, the department believed there was much work yet to be done.

At the conclusion of the hearing, the juvenile court made oral findings on the record. On the same day the juvenile court signed its waiver of jurisdiction and order of transfer to a criminal

district court. The order stated, in part, that the court found "for the welfare of the community, the seriousness of the alleged offenses and the background of H.F., that criminal proceedings are required." In addition, the court found H.F. has not accepted or responded adequately to supervision, and has a pattern of refusing to remain at home and to remain away from associates in the community who habitually violate the law. The court also found the previous history of H.F. indicates a present need for placement of H.F. in a controlled, structured facility. The court further found the public needs protection from H.F. and the prospects of adequate protection of the public and the likelihood of rehabilitation of H.F. by use of procedures, services and facilities currently available to the juvenile court are remote. As to specific factual findings, the court found, in part, H.F. had multiple prior adjudications, three prior placements, and pending violations of the juvenile probation, H.F. absconded from home immediately after the last court ordered placement, refuses to remain home, has gang association, numerous contacts and investigations by the Lancaster Police Department of felony offenses, and H.F. expressed no remorse for causing the death of Hearn. This interlocutory appeal followed.

## DISCUSSION

To waive its jurisdiction and transfer H.F. to adult criminal court, the juvenile court had to find (1) H.F. was alleged to have committed a felony, (2) he was fourteen years old or older at the time he committed the alleged offense, and (3) after a full investigation and a hearing there was probable cause to believe H.F. committed the alleged offenses, and that because of the seriousness of the offenses alleged or the background of H.F. the welfare of the community requires criminal proceedings. *See* TEX. FAM. CODE ANN. § 54.02(a)(1)–(3).

In making the determination required by section 54.02(a)(3), the juvenile court had to consider, among other matters:

> (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

–8–

(2) H.F.'s sophistication and maturity;

(3) H.F.'s record and previous history; and

(4) the prospects of adequate protection of the public and the likelihood of H.F.'s rehabilitation by use of procedures, services, and facilities currently available to the juvenile court.

*See id.* § 54.02(f). Family code section 54.02(h) requires that, if the juvenile court waives jurisdiction, "it shall state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court." FAM. § 54.02(h); *Moon v. State*, 451 S.W.3d 28, 38 (Tex. Crim. App. 2014).

With regard to our review of that order, the court of criminal appeals has instructed us as follows:

> [I]n evaluating a juvenile court's decision to waive its jurisdiction, an appellate court should first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under "traditional sufficiency of the evidence review." But it should then review the juvenile court's ultimate waiver decision under an abuse of discretion standard. That is to say, in deciding whether the juvenile court erred to conclude that the seriousness of the offense alleged and/or the background of the juvenile called for criminal proceedings for the welfare of the community, the appellate court should simply ask, in light of its own analysis of the sufficiency of the evidence to support the Section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles. In other words, was its transfer decision essentially arbitrary, given the evidence upon which it was based, or did it represent a reasonably principled application of the legislative criteria? And, of course, reviewing courts should bear in mind that not every Section 54.02(f) factor must weigh in favor of transfer to justify the juvenile court's discretionary decision to waive its jurisdiction.

*Moon*, 451 S.W.3d at 47. Further, a reviewing court should measure sufficiency of the evidence to support the juvenile court's stated reasons for transfer by considering the sufficiency of the evidence to support the facts as they are expressly found by the juvenile court in its certified order. *In re G.B.*, 524 S.W.3d 906, 914–15 (Tex. App.—Fort Worth 2017, no pet.). The appellate court should not be made to rummage through the record for facts that the juvenile court might have found, given the evidence developed at the transfer hearing, but did not include in its written

–9–

transfer order. *Id.* Thus, in conducting a sufficiency review of the evidence to establish the facts relevant to section 54.02(f) factors and any other relevant historical facts, which are meant to inform the juvenile court's discretion whether the seriousness of the offense alleged or the background of the juvenile warrants transfer for the welfare of the community, the appellate court must limit its sufficiency review to the facts that the juvenile court expressly relied upon, as required to be explicitly set out in the juvenile court's transfer order under Section 54.02(h). *Id.*

However, while the order must show the juvenile court considered the four factors in section 54.02(f), the court "need make no particular findings of fact with respect to those factors." *Moon*, 451 S.W.3d at 41–42. Further, the court may order a transfer on the strength of any combination of the criteria listed in section 54.02(f). *Hidalgo v. State*, 983 S.W.2d 746, 754 n.16 (Tex. Crim. App. 1999).

In the juvenile court's transfer order the court states "the alleged offenses were against persons and property . . . [H.F.'s] level of maturity is sufficient to be tried as an adult and to aid an attorney in his defense . . . [H.F.] has not accepted or responded to supervision; [H.F.] has a pattern of refusing to remain at home; [H.F.] refuses to remain away from associates in the community who habitually violate the law; . . . the background of [H.F.] indicates that the welfare of the community requires criminal prosecution; the previous history of [H.F.] indicates a present need for placement of the child in a controlled, structured facility; the public needs protection from [H.F.]; the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services and facilities currently available to the Juvenile Court is remote." Consequently, the order establishes the juvenile court considered all of the section 54.02(f) factors.

H.F. does not challenge the juvenile court's determinations concerning the first three section 54.01(f) factors; rather, he claims the juvenile court abused its discretion in ordering the

transfer because, he claims, the evidence introduced at the hearing established there are sufficient safeguards in place for the public and a very high probability of rehabilitation for H.F. by use of procedures, services, and facilities currently available to the juvenile court. More particularly, H.F. contends because the department has a capital offender program, that is designed to meet the need of offenders like H.F., and because he demonstrated he successfully completed structured programs, it was arbitrary for the court to choose not to retain jurisdiction to allow H.F. to participate in the capital offender program. For the following reasons, we disagree.

First, we note, that not every section 54.02(f) factor has to weigh in favor of transfer. Nevertheless, in this case they do. While it may be true that the department has a capital offender program, no evidence presented at the hearing establishes this placement would protect the public and rehabilitate H.F. In fact, the evidence presented indicates the opposite. The juvenile court judge was familiar with the complete ineffectiveness of the multiple types of juvenile rehabilitation measures already attempted with H.F.: probation, Juvenile Detention, the START program, and the drug treatment program. Notwithstanding these measures, when released from detention and on probation, H.F. violated numerous terms of his probation, and within a short period of time after being released from the drug treatment program, H.F. was on drugs again and committed several violent and egregious crimes, one resulting in the death of a man. At the time of the hearing, H.F. was almost 17-years old and he had been in the juvenile justice system for over four years without successfully having been rehabilitated.

Given the repeated failures of the prior rehabilitative measures and the increasingly violent nature of H.F.'s behavior, and the assessments and recommendations of Detective Rohack and Officer Jefferson, the evidence is legally and factually sufficient to support the juvenile court's determination that "the prospects of adequate protection of the public and the likelihood of rehabilitation of [H.F.] by use of procedures, services and facilities currently available to the

–11–

Juvenile Court is remote." *See In re Z.J.*, No. 05-19-00190-CV, 2019 WL 3491934, at \*4 (Tex. App.—Dallas Aug. 1, 2019, no pet. h.); *In re K.J.*, 493 S.W.3d 140, 154 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

In light of the juvenile court's findings regarding H.F.'s prior placements, violations of juvenile probation, propensity to run away, abuse drugs, commit criminal acts, and the lack of remorse for causing the death of Hearn and our review of the record, which supports those findings, we cannot say the trial court's decision was arbitrary or made without reference to guiding rules. *See Moon*, 451 S.W.3d at 47. Accordingly, we conclude the juvenile court did not abuse its discretion by waiving jurisdiction and transferring H.F. for trial as an adult. We overrule H.F.'s sole issue.

## CONCLUSION

We affirm the juvenile court's transfer order.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

190237F.P05

–12–



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

IN THE MATTER OF H.F., A JUVENILE

No. 05-19-00237-CV

On Appeal from the 305th Judicial District Court, Dallas County, Texas
Trial Court Cause No. JD-18-01302-X.
Opinion delivered by Justice Schenck.
Justices Osborne and Reichek participating.

In accordance with this Court's opinion of this date, the order of the trial court waiving its jurisdiction and transferring H.F. case to the criminal district court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 23rd day of August 2019.